No. 37,821

RALPH HENDERSON and FAE HENDERSON, *Appellees,* v. NATIONAL MUTUAL CASUALTY COMPANY, a Corporation, *Appellant,* and LEE N. GUTHRIE, doing business as GUTHRIE TRUCK LINE.

(215 P. 2d 225)

Opinion filed February 28, 1950.

*J. B. McKay,* of El Dorado, argued the cause, and *Clem H. Silvers* and *James B. McKay, Jr.,* both of El Dorado, were with him on the briefs for appellant.

*Paul R. Kitch,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for appellees.

The opinion of the court was delivered by

PRICE, J.: This was an action by parents to recover damages for the wrongful death of their son, Norval Henderson, a single man, resulting from an automobile collision at night between the car in which he was a passenger and a spudder, a large piece of machinery, left standing on a highway without lights.

Defendants were Lee N. Guthrie, doing business as Guthrie Truck Line, and National Mutual Casualty Company, a corporation, his insurance carrier. During the course of the trial the action was dismissed as to Guthrie, the circumstances of which will be noted later.

This is the third appearance of this case in this court. In *Henderson v. National Mutual Cas. Co.,* 164 Kan. 109, 187 P. 2d 508, we affirmed the ruling of the trial court in overruling defendants' general demurrer to plaintiffs' third amended petition. Following that decision issues were joined and a trial was had which resulted in a verdict for plaintiffs in the amount of $5,941. On defendants' motion the trial court granted a new trial on the ground that the answers to some of the special questions returned by the jury where inconsistent with each other and with the general verdict. Plaintiffs appealed from the order granting a new trial, and defendants appealed from the order overruling their demurrer to plaintiffs' evidence. We affirmed both rulings in *Henderson v. National Mutual Cas. Co.,* 166 Kan. 576, 203 P. 2d 250.

Following that decision a second trial was had which resulted in a verdict for plaintiffs against the defendant insurance carrier (hereinafter referred to as National Mutual) in the amount of $10,000, being made up of $625 for medical, hospital and funeral expenses, and $9,375 for future contributions to be made by deceased for the support of plaintiffs, his parents.

The defendant, National Mutual, has appealed from the order overruling its motion for a new trial, from the judgment, and from all adverse rulings and orders made during the course of the trial, and which will be noted and discussed later in this opinion.

Both parties concede the evidence was substantially the same as at the first trial—in fact the testimony given by a number of witnesses at the first trial was read when the case was retried, and for that reason we will not unduly encumber this opinion with a detailed recital of it, but reference is made to our opinion referred to above, at 166 Kan. 576, for a summary of such evidence. In passing, we take note that one of defendant's fifteen specifications of error is that the lower court erred in overruling its demurrer to plaintiffs' evidence. In our decision, *supra,* at page 583, we held the demurrer to plaintiffs' evidence in the first trial was properly overruled and no reason has been advanced to cause us to change that holding with respect to the lower court's ruling in that regard in the second trial.

As before stated, National Mutual brings fifteen specifications of error for our review. Some will be discussed separately and others will be grouped and treated together.

It is vigorously urged that the court erred in overruling National Mutual's motion to quash and its request for an opportunity to remove the case to the federal court. The circumstances giving rise to these motions were as follows:

The case went to trial on May 4, 1949, and late that afternoon counsel for plaintiffs advised the court that he had only one more witness to call and suggested that the trial be recessed until the following morning. At the same time he announced that plaintiffs dismissed as to defendant Guthrie. The trial judge then, at 4:32 p. m., adjourned court and excused the jury until nine o'clock the following morning. Thereupon followed a conference between court and counsel for both sides concerning the matter of instructions and special questions, and during this discussion counsel for National Mutual advised the court that he was refiling and requesting the court to

give the same instructions and special questions that he had submitted and requested be given at the first trial.

The following morning counsel for National Mutual, appearing specially, filed a motion to quash, vacate and set aside the service of summons had on it, and all appearances made by it, on the ground that such defendant did not reside in and was not served with summons in Butler county, and that since plaintiffs did not reside in and the cause of action did not arise in Butler county, the action was improperly brought and maintained in that county. This motion was overruled. Whereupon counsel for National Mutual stated to the court:

"I want to make the record before anything further is done. There is one more matter I would like to call to the attention of the court. This case now for the first time is removable to the United States Court, and the defendant desires to exercise its right and privilege to have it removed. Obviously, we haven't had time to prepare the necessary petition for removal. I think we are entitled to an opportunity to do that."

After some discussion between court and counsel this motion for removal was overruled and the trial was resumed. At the conclusion of plaintiff's evidence the demurrer thereto was overruled.

The only evidence offered by National Mutual was the testimony of one witness, a garage man, concerning automobile headlights, which for our purposes is immaterial and will not be noted.

The jury was instructed, arguments were made by counsel and the jury returned a verdict in favor of plaintiffs and answered special questions, which will be dealt with later.

Defendant National Mutual's argument in behalf of its motion to quash and vacate service of summons had on it and all appearances made by it, and its motion for leave to remove the case to the federal court, is this:

Since plaintiffs were residents of Greenwood county, where the cause of action arose, and Guthrie was a resident of Butler county, where he was served and where the action was brought, and National Mutual, being an Oklahoma corporation and being served only through the commissioner of insurance, when the action was dismissed as to Guthrie, National Mutual thus was the only defendant remaining in the case, and since the action could not in the first instance have been maintained only against National Mutual in Butler county, but would have had to be brought in the county in which it resides or may be summoned (G. S. 1935, 60-509), or in the county in which the cause of action arose or in which plaintiffs may

reside (G. S. 1935, 40-218), therefore when the action was dismissed against Guthrie it was no longer maintainable against National Mutual in Butler county. It is conceded that the action was properly brought in Butler county in the first instance because Guthrie was joined as a defendant, and counsel concedes that the filing of a motion to quash so long as Guthrie remained in the case would have been a useless gesture, but it is argued that upon the dismissal as to him the motion to quash service and all appearances should have been sustained, and, failing in that, National Mutual was entitled to have the case removed to the federal court, that being the first instance when the requisites to federal jurisdiction came into being, and counsel argues that on the face of the thing it is obvious that during the overnight adjournment of court he had no opportunity to prepare the necessary formal papers for removal.

On the other hand, counsel for plaintiffs contends that the filing and submission of requested instructions and special questions by opposing counsel immediately following the dismissal as to Guthrie, and prior to the motion to quash and vacate and to remove the cause, constituted a waiver of such right, if one in fact ever existed, and a number of authorities to this effect are cited in support thereof. Our attention is also called to the federal statute providing for removal of causes in effect at the time of trial.

While there is considerable authority to the effect that National Mutual can be said to have waived any objection as to venue and jurisdiction of the district court of Butler county on account of its many appearances for all purposes, and counsel's submission of requested instructions and special questions after the dismissal as to Guthrie and prior to its motion now under consideration (see *Olsen v. Lambert*, 158 Kan. 94, 145 P. 2d 159), we prefer to uphold the lower court's denial of the motion to quash and vacate on a different but related basis. Guthrie resided in and service was had upon him in Butler county, and even though plaintiffs lived in Greenwood county, where the cause of action arose, and National Mutual is a foreign corporation, the action was therefore properly brought against both Guthrie and National Mutual in Butler county. Guthrie was a necessary and not a mere nominal party defendant. This is not a case where an unwilling adversary is brought into court by joining some mere nominal party defendant upon whom personal service can be had in that jurisdiction when in fact a plaintiff has no *bona fide* cause of action against such de-

fendant so nominally joined. This case had been tried once before and two appeals to this court had already been taken. It is true that National Mutual had not previously objected to the jurisdiction for the simple reason that such objection would have availed nothing, yet we cannot say from the record before us that the action was not maintainable against the remaining defendant, National Mutual, after the dismissal as to Guthrie.

What about the application to remove the action to the federal court? Counsel for National Mutual argues that his application for removal was made immediately upon the case first becoming removable—that is, after the dismissal as to Guthrie. Counsel for plaintiffs argues that National Mutual submitted itself to the jurisdiction of the state court after the cause became removable by filing requests for instructions and special questions and by presenting its motion to quash and thus waived any rights to remove that it may have had, and that if any right of removal ever existed it has been lost by failure at any time to file a petition for removal. No such petition has ever been filed.

The trial was had on May 4 and 5, 1949. The federal statute providing for removal of causes from a state court to the federal court, in effect on those dates, is as follows:

"(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

"(b) The petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later.

. . . . . . . . . . . . .

"(d) Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

"(e) Upon the filing of such petition and bond the defendant or defendants shall give writen notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further therein unless the case is remanded." (28 U. S. C. A., § 1446.)

This statute became effective September 1, 1948, and was in

effect until May 24, 1949, when subsection (b) thereof was amended to read as follows:

"(b) The petition for removal of a civil action or proceeding shall be filed within twenty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within twenty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, or other paper from which it may first be ascertained that the case is one which is or has become removable." (§ 83, P. L. 72, 81st Congress, First Session.)

It will be seen that under the statute in force on May 4, 1949, the petition for removal of a civil action to a federal court must be filed within twenty days after commencement of the action or service of process, whichever is later. This action was commenced and service of process was had on National Mutual long prior to May 4, 1949, the date when counsel concedes the action first became removable due to the dismissal as to Guthrie. The amendment, which became effective May 24, 1949, provided in substance that if the action was not originally removable then a petition for removal might be filed within twenty days from the date on which it is first ascertained to be removable. Notwithstanding the fact that a petition for removal prior to the dismissal as to Guthrie would have been unavailing, this simple fact stands out, and that is, under the statute as it existed on May 4 and 5, 1949, National Mutual was without remedy for the reason that under the circumstances disclosed by this record it was too late in applying for such removal. It is true that in the interval between September 1, 1948, and May 24, 1949, a litigant under some circumstances could be said to be in a sort of "void," but to cure such defect was undoubtedly the purpose of the amendment which became effective May 24, 1949, and it was so held in *Cobleigh v. Epping Brick Co.* (N. H., August 16, 1949), 85 F. Supp. 862. It was not until the amendment became effective that a defendant had the right in an action not originally removable to petition for removal upon it first being ascertained that it had become removable, and as of that date the trial of this case had already been completed. The court did not err in denying National Mutual's application for time in which to prepare the necessary papers for removal.

Complaint is made of instructions given and of special questions submitted, and the court's refusal to give certain requested instructions and special questions. Ordinarily perhaps we would feel compelled to take up and discuss in some detail each of these complaints, but here we are constrained to say that to do so would merely unduly extend this already lengthy opinion and would add nothing to the body of our law on the subject. We have read the evidence and have carefully examined the instructions and special questions given to the jury, together with those requested by counsel and refused by the court. It is true that the instructions are quite long and somewhat repetitious in several respects, and perhaps some of them could well have been omitted, but we think they fully covered the issues involved and those points included in the requested instructions which were refused. Furthermore, several points in controversy in this respect were discussed in our opinion on the second appearance of the case in this court and require no further elaboration now. The same can be said with respect to the special questions submitted and those which were refused.

These special questions and the answers thereto returned by the jury are as follows:

"1. How fast was the car traveling in which Norval Henderson was riding at the time of the collision? A. 35 miles per hour.

"2. Was the rate of speed of the car in which Norval Henderson was riding reduced at any time immediately before the collision? A. No.

"3. Did Norval Henderson at any time before the collision make any objection or protest as to the speed or manner in which the car he was riding was being driven? If your answer is 'yes' answer fully. A. No.

"4. Do you find Norval Henderson was guilty of any acts of negligence? A. No.

"5. If you answer question No. 4 in the affirmative, state what those acts of negligence were. A. ————.

"6. Do you find that Lee N. Guthrie was guilty of negligence? A. Yes.

"7. If you answer question 6 in the affirmative, state what those acts of negligence were. A. The defendant did not provide proper torches and flagmen according to law.

"8. If you find for the plaintiff, please state how much, if anything, you allow the plaintiffs for each of the following items:

a. Medical and hospital services, drugs and funeral expenses....... $625.00
b. Other expenses .................................................... .......
c. Future contributions to be made by Norval Henderson for the
   support of the plaintiffs.................................... 9,375.00"

National Mutual moved for judgment on answers 1, 2 and 3, for judgment notwithstanding the verdict, and moved to set aside answers 4, 6, 7 and 8c.

We will not labor the question but simply say that answers to questions 1, 2, 3, 4, 6 and 7 are supported by substantial, competent evidence and it was clearly within the province of the jury to find the facts disclosed by them. The court did not err in overruling the motions with respect to these answers.

We come now to the last complaint with reference to the alleged erroneous admission of evidence concerning the financial and physical condition of plaintiffs subsequent to their son's death and as to the alleged excessiveness of the verdict. Under the provisions of the statute in force at the time their son was killed (G. S. 1945 Supp. 60-3203), plaintiff's recovery is limited to the financial loss resulting to them by virtue of his death. The deceased was about twenty-two years of age and had never been married. Following his graduation from high school he engaged in farming and doing odd jobs. The evidence showed him to be a good, clean and sober young man, a good farmer, dependable, and a hard worker. At the time of his death his mother was forty-three years old and his father sixty-five. Their only other child was a daughter. The father's health was not good and he was unable to do heavy work. His mother underwent an operation for varicose veins about a month prior to his death, following which she was unable to do much work which required her to be on her feet. For some years prior to his death the family had lived on a rented 240 acre farm, with the deceased doing most of the heavy work. There was testimony that his services were worth $100 to $150 per month, but he was not paid anything by his parents. On a few occasions when he hired out to others the money for such services was paid directly to his father. A few months prior to his death he rented a farm which was about three-quarters of a mile from where his parents lived, following which he did all of the heavy work on both places; and there was other evidence to show that he always had the welfare of his parents in mind. About six months subsequent to his death the parents moved to another farm, the mother testifying that it was necessary to do so because her husband was unable to farm the place where they formerly resided, alone. The deceased and his father had jointly bought some farm machinery but after his death it was sold and the proceeds did not exceed the amount of the mortgage on it. The mother took employment as night operator at a telephone office at which she earned not to exceed $10 per week. There was other testimony tending to show their reduced financial

circumstances subsequent to their son's death. Some of this testimony was objected to on the ground that evidence of subsequent misfortunes would not be admissible and that damages were fixed as of the date of death. It is conceded that in general that is a correct statement of the law, but we do not agree with counsel that the evidence here was inadmissible. In order to recover more than mere nominal damages it was incumbent upon the parents to prove a reasonable expectation of support by their son and the extent of it. They introduced evidence concerning what he had done for them and we think evidence of the changed conditions and their changed circumstances, directly produced and brought about on account of his death, was therefore admissible. In fact, evidence of such changed circumstances was one of the best methods by which to prove their pecuniary loss because of his death. While the mother was testifying some mention was made of the fact that she had just received a message telling of her father's death. Such fact was of course irrelevant to the issues and had no place in this lawsuit, but we cannot say that such gratuitous statement, made in the presence of the jury, vitiated the proceedings and the verdict. This lawsuit was hotly contested from start to finish and it is seldom, if ever, that in such a situation some remark or bit of improper evidence does not creep into the trial, but on appeal we are to disregard mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the parties (G. S. 1935, 60-3317), and from a careful perusal of this record we cannot say that any reversible error appears.

Was this verdict for $10,000 so excessive as to "shock the conscience" of this court and thus to require a remittitur? As heretofore stated, it was made up of $625 for medical, hospital and funeral expenses, and $9,375 for future contributions to be made by the deceased for the support of his parents. The evidence concerning what the deceased had done in the past and what might reasonably, under the circumstances, be expected of him in the future has already been narrated. We are cited many decisions by counsel for both sides on the question of excessive verdicts. Each has been noted, together with the facts and circumstances of the particular case. Many verdicts have "shocked the conscience" of this court so that a remittitur or reversal has been ordered, but there is no uniform yardstick or hard and fast rule by which the alleged excessiveness of a verdict can be measured. We find nothing here to

indicate this verdict was returned under the influence of passion and prejudice, in which event we would be compelled to order a new trial rather than a remittitur. No useful purpose would be served by a detailed discussion of the facts of other cases dealing with this question. Each arose out of and depended upon its particular circumstances. Here the jury heard the testimony and observed the witnesses, including the mother of deceased. In the recent case of *Harral v. Kent Corporation*, 168 Kan. 322, 212 P. 2d 356, we quoted approvingly from *Rosson v. Wichita Transportation Corp.*, 167 Kan. 24, 204 P. 2d 591, where it was said:

"In order to hold this verdict excessive we would have to substitute our judgment for that of the jury and the trial court and under the facts and circumstances of this case we do not feel compelled to do so."

And so here. We are of the opinion that under all the facts and circumstances of this case the verdict was not excessive and the lower court did not err in rendering judgment thereon.

In conclusion we wish to state that we have given careful consideration to every contention raised but are unable, from the record before us, to find anything which would require a reversal of this case. The judgment of the lower court is therefore affirmed.