No. 37,799

MERL L. KNOBLOCK, *Appellee*, *v.* THOMAS H. MORRIS and ARMOUR & COMPANY, *Appellants*.

(220 P. 2d 171)

Opinion filed July 8, 1950.

*Allen Meyers*, of Topeka, argued the cause, and *P. W. Crocker* and *S. M. Terbovich*, of Kansas City, and *Lowell R. Johnson* and *Harold T. Van Dyke*, of Kansas City, Mo., were with him on the briefs for the appellants.

*David W. Carson*, of Kansas City, argued the cause, and *Ernest N. Yarnevich*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This appeal arises out of an action to recover for per-

sonal injuries and property damage resulting from an automobile collision.

In February, 1948, the plaintiff, a resident of Nickerson, was a patient in a clinic in Kansas City, Mo., undergoing an operation and treatment for a prostate condition. On the morning of February 23, 1948, he, accompanied by his wife and small child, started out in his Buick automobile to visit a relative living west of Kansas City, Kan. The day was clear and the pavement dry. He was driving in the westbound traffic lane on U. S. Highway 40, which at the location in question is a four-lane highway with a medial strip of grass between the eastbound and westbound lanes.

Also on that morning the defendant, Morris, an employee of defendant Armour & Company, started out from Kansas City to Bonner Springs on his employer's business. He proceeded west on U. S. Highway 40 until reaching the intersection of said highway with State Highway 107, at which point he turned off to the south. After driving south on State Highway 107 for a short distance he realized that he was on the wrong road to Bonner Springs and turned around and proceeded back toward U. S. Highway 40. The intersection of these two highways is level but there is a decline or downgrade on State Highway 107 toward the south from the intersection. There is a slight downgrade east from the intersection on U. S. Highway 40. There is a stop sign on the east side of State Highway 107 about two car lengths south of the paved portion of U. S. Highway 40.

The undisputed evidence is that defendant Morris, hereinafter referred to as the defendant, did not stop before coming onto U. S. Highway 40 and ran into plaintiff's car in the intersection as plaintiff was driving west in the westbound traffic lanes. Plaintiff received personal injuries and his car was badly damaged—hence this lawsuit.

Plaintiff's suit, as originally brought, sought actual damages in the sum of $8,227 and punitive damages in the amount of $1,000. Later, by leave of court, he amended his petition by alleging permanent disability and raising the prayer for actual damages to $30,227. The cause was tried before a jury which answered special questions and returned a general verdict for plaintiff in the sum of $12,707. Defendant's motions to set aside the answers to certain special questions, for judgment notwithstanding the verdict, and for a new trial, were overruled and they have appealed.

This is primarily a fact case and while we do not consider it necessary to relate all of the testimony in detail, yet a brief summary of the evidence is required in order to obtain a proper understanding of the principal questions presented on appeal.

At the outset it should be stated that the defendant concedes his negligence and there is no question concerning whether defendant was engaged in his employer's business at the time of the collision. Furthermore, it is conceded plaintiff was not guilty of contributory negligence so as to bar his recovery, and the only questions briefed and argued on appeal pertain to the propriety of several instructions given, the alleged excessiveness of the verdict, and the matter of punitive damages.

Concerning the facts of the collision, the evidence is as follows:

The plaintiff testified that as he was driving west in the north lane of U. S. Highway 40 when he came to the intersection of State Highway 107 he "first heard the roar of a motor at high speed"; that he then turned his head to the left "and seen a car streak like a shot out of a gun"; that it hit his car on the left rear wheel, spinning it around and turning it over, throwing plaintiff and his wife and child out on the pavement.

Defendant's version of the collision was that after he discovered he was mistakenly on State Highway 107 he turned around and drove back to U. S. Highway 40; that as he approached the intersection he was traveling between thirty and thirty-five miles per hour; that as he came up to the stop sign he applied his brakes, which caused his car to skid on some loose gravel; that he then took his foot off the brake pedal so as to stop the skidding; that he then jammed his foot back on the brake pedal to stop, but in so doing his foot slipped off the brake pedal and hit the accelerator, with the result that his car shot forward into the intersection and onto the highway. He testified that he saw plaintiff's car coming from the east. According to him plaintiff's car was not turned over and its occupants were not thrown out on the pavement.

Plaintiff sustained a cut on one knee and on his forehead, the latter as a result of his glasses being broken. These wounds were bathed at a near-by store on the highway and plaintiff was then taken to a hospital where the cuts were further treated, following which he was immediately released. Defendant then drove plaintiff to the clinic where the latter had been undergoing prostate treatment. Apparently he suffered no immediately noticeable in-

juries as a result of the collision, other than the cuts heretofore referred to and shock. Shortly thereafter he and his family returned to their home.

Plaintiff was an oil well rig-builder and contractor, and had worked in the oil fields for a number of years. His work was of the heavy type and required much lifting of heavy objects and materials. The evidence showed that while so engaged he earned over twenty dollars per day. His Buick automobile, which was badly damaged in the collision, was equipped with a lifting attachment for use in his work. There was testimony to the effect that one in his occupation was allowed eight dollars per day for the use of his car. He testified that following the collision he suffered headaches, pains in his back and limbs and was unable to carry on his usual line of work in the manner which he had previously done, although the evidence also showed that he was by no means an invalid and that he was still capable of engaging in oil field work to a limited extent. About two months after the collision he returned to Kansas City for a medical examination at the request of his attorney. X-rays of his back were taken at that time. Shortly before the case went to trial in February, 1949, he was examined by several doctors and X-rays of his back were again taken. Considerable medical testimony was given at the trial and in brief it can be stated that the substance of it was that for a number of years plaintiff had been suffering with osteoarthritis—that is, inflammation of the bones—and that possibly this condition had been brought on by his prostate trouble. There was testimony to the effect that his arthritic condition had not necessarily been accelerated, so far as the later X-rays showed, during the year following his injuries. On the other hand, there was ample medical testimony to the effect that trauma—that is, a blow such as he received—could aggravate the condition of his spine to the point where he would be permanently disabled so far as the performance of heavy manual labor was concerned. Plaintiff was about fifty-eight years of age.

There was considerable testimony by co-workers and associates of plaintiff to the effect that following his injuries plaintiff complained of soreness and lameness in his back and that he was unable to do the work he formerly had done.

The jury answered special questions as follows:

"1. If you find from the evidence that plaintiff, Merl L. Knoblock, has disability to his back, do you attribute that disability to arthritis?

"Answer: No.

"2. Is the plaintiff's disability, if you find that he sustained any, the result of an accidental cause as defined by the Court?

"Answer: No.

"3. Was plaintiff's arthritis of long standing and in existence prior to the collision?

"Answer: Yes.

"4. Do you find and believe from the evidence that the plaintiff was negligent which directly contributed to cause the collision complained of?

"Answer: No.

"5. If you answer Question No. 4 'Yes,' state the particular or particulars of such negligence?

"Answer: ———— .

"6. If you find from the evidence that plaintiff, Merl L. Knoblock, had arthritis of the back, was that arthritic condition heightened and made more painful as a result of the collision?

"Answer: Yes.

"7. Do you find from the evidence that Merl L. Knoblock does have a permanent disability of the back?

"Answer: Yes.

"8. If you answer the next preceding question 'Yes,' state whether plaintiff's present disability of the back was caused or accelerated by shock or injury resulting from the collision.

"Answer: Yes.

"9. If you find that defendants are responsible for damage to plaintiff's car, what do you assess that damage to be?

"Answer: $1,250.00.

"10. If you find in favor of the plaintiff, state whether or not you allow plaintiff exemplary damages.

"Answer: Yes.

"11. If you answer Question No. 10 'yes' state the amount of exemplary damages which you allow the plaintiff.

"Answer: $1,000.00."

Defendants first complain of the form of several instructions given, their complaint being that the court erred in "summarizing" the allegations of plaintiff's petition with reference to items of damage claimed by him when there was no evidence to support such alleged damages. No good purpose would be served by setting out these instructions. We have examined them and find the complaint to be without substantial merit.

We pass now to the question of punitive damages. Plaintiff sought punitive damages in the amount of $1,000, and the jury allowed him that amount. Defendants contend the evidence in this case did not justify the court in submitting the question of punitive damages to the jury, and, furthermore, even though the case were properly one for the submission of such question the court erred in its instruction

on the subject. The court, in instruction number 21, instructed the jury:

"... And if you find from the preponderance of the evidence that the driver of the car of the defendant Armour & Company, Thomas H. Morris, was guilty of willful and wanton negligence, and disregard of the lives or safety of others on said highway; and thereby caused said collision; you may find for the plaintiff an additional sum, not exceeding $1,000.00, as a suitable punishment for such wrongful act on the part of the defendants. However, the total aggregate sum of your verdict cannot exceed $31,227.00."

We hold that it was proper to submit the question of punitive damages to the jury and that the quoted portion of the court's instruction was sufficient. Defendants argue that the undisputed evidence is that the defendant intended and attempted to stop before entering the intersection, but that in applying his brakes his foot slipped off the brake pedal, hitting the accelerator, which in turn caused his car to dart out into the intersection, and that such fact certainly does not tend to prove any wanton conduct and disregard of the lives or safety of others on the part of defendant. The only trouble with that argument is that the jury was not bound to believe defendant's testimony in this respect. Defendant knew the stop sign was there and he knew that U. S. Highway 40 was a so-called high-speed four-lane highway. He approached the intersection at a speed of thirty or thirty-five miles per hour and from the physical fact of his car "shooting" out into the highway the jury was justified in finding that from all of the surrounding facts and circumstances his manner of driving showed a wanton disregard of the safety of others properly on the highway.

We come now to the principal ground of appeal, namely, the excessiveness of the verdict. Defendants contend that it is not only excessive but is so excessive as to shock the conscience of this court and compel us to hold that it necessarily was the result of passion and prejudice on the part of the jury, which would necessitate the granting of a new trial rather than a remittitur.

We have examined the evidence in detail—medical as well as lay. A number of competent physicians testified concerning plaintiff's past physical condition as disclosed by the X-rays of his back and as to the effect the trauma received by plaintiff could and probably did have on that condition. The mere fact that a person receiving an injury has a predisposition to a certain disease, or in fact had such disease or condition, would not relieve one who was guilty of negligence from liability in damages if it is established that such

disease or condition was aggravated or made more painful by reason of the injury caused by such negligence. We have no doubt but that all of these matters were argued fully to the jury and without laboring the question further we hold that the findings of the jury are amply supported by substantial, competent evidence. This verdict was for $12,707, $2,250 of that amount being for damage to plaintiff's car and for punitive damages. We have no way of knowing the specific amounts found by the jury on the other claims for damages in the remaining $10,457 of this verdict. Included in such remainder could be loss of wages, destruction of clothing and glasses, loss of future earning power, pain and suffering and permanent disability. An analysis and detailed discussion of our many decisions on the question of alleged excessive verdicts would serve no useful purpose and would add nothing to the body of our law on the subject. Each case must stand or fall on its own facts and circumstances. There was evidence in this case to the effect that plaintiff's disability was permanent. In a case such as this the jury is the trier of the facts, not this court. It heard the testimony and observed the witnesses and we can find nothing in this record to indicate that the verdict was the result of passion and prejudice. The trial judge approved the verdict in its entirety, and from the entire record before us we would not be justified in substituting our judgment for that of the jury. (*Henderson v. National Mutual Cas. Co.*, 168 Kan. 674, 215 P. 2d 225.)

An examination of the entire record discloses nothing approaching reversible error and the judgment of the lower court is therefore affirmed.

PRICE, J. (dissenting in part): In my opinion the facts of this case did not justify the submission of the question of punitive damages to the jury. Furthermore, assuming that its submission were proper, the only instruction given by the court (and which is set out in the opinion) was wholly insufficient and inadequate to define wanton conduct and to give the jury a proper understanding of the subject matter. I would set aside the award of punitive damages.

THIELE and WEDELL, JJ., concur in the foregoing partial dissent.