No. 39,548

EVELYN KNOCHE, *Appellee,* v. MEYER SANITARY MILK COMPANY, a Corporation, *Appellant.*

(280 P. 2d 605)

Opinion filed March 5, 1955.

A. J. Herrod, of Kansas City, argued the cause and was on the briefs for the appellant.

*Leonard O. Thomas,* of Kansas City, argued the cause and *Arthur J. Stanley; Arthur J. Stanley, Jr.; J. E. Schroeder,* and *Lee E. Weeks,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action by the plaintiff to recover damages for injuries sustained by her in a collision between the defendant's truck and an automobile driven by her. She prevailed and the defendant appeals.

For present purposes it may be said that in her petition on which the cause was tried, the plaintiff alleged that about noon on March 4, 1950, she was driving an automobile south on Mahaney Road, an established highway in Wyandotte County, at a point approximately 500 feet south of State Highway No 5, and at that time Funk, an employee of the defendant, was in charge of defendant's milk truck which was parked headed in a southeasterly direction in a private driveway leading to the east from Mahaney Road, and that as she approached the entrance of that driveway and had reached a point directly opposite that entrance, Funk suddenly and without warning operated the truck backward and in a northwesterly direction into and against the automobile driven by plaintiff, causing her severe, permanent and painful injuries; that the collision and her injuries were caused solely and proximately by the negligence of the defendant and its agent in failing (*a*) to stop the truck to avoid the automobile plaintiff was driving; (*b*) to stop, slow down or turn aside to avoid the collision when the defendant should have known the collision was imminent; (*c*) to sound a horn or give any signal of intention to back from the driveway into Mahaney Road; (*d*) to see the plaintiff's automobile when by the exercise of reasonable care and caution it could have been seen; (*e*) to yield the right of way to plaintiff; and (*f*) in driving the truck into Mahaney Road without first looking to observe whether other traffic was approaching the private driveway so closely as to constitute an immediate hazard. We shall not at this time detail allegations of injuries sustained. She prayed for a judgment of $25,000.

For present purposes it may be said that defendant in its answer admitted formal matters, denied generally and alleged that if plaintiff received injuries, the same were caused or contributed to by her negligence (*a*) in driving at such a rate of speed she was unable to stop within the distance she could see defendant's truck in and upon Mahaney Road; (*b*) in failing to have her automobile under

control, to stop the same and in permitting it to run into, upon and against defendant's truck; (c) in failing to turn her automobile to one side to avoid a collision and in driving on the wrong side of Mahaney Road; (d) in failing to keep a proper lookout for other vehicles on Mahaney Road and particularly the rear end of defendant's truck; and (e) in failing to stop when, by the exercise of reasonable care, she could have seen the rear end of defendant's truck in and upon Mahaney Road. Defendant prayed that plaintiff take nothing.

The plaintiff's reply denied any matter of the answer inconsistent with the allegations of her petition.

At the trial of the action the defendant demurred to the plaintiff's evidence as not showing facts sufficient to constitute a cause of action against the defendant or that it was guilty of any negligence and that the evidence showed plaintiff was guilty of negligence which contributed to and was the proximate cause of any injuries or damage she received. This demurrer was overruled. The trial proceeded and when the parties rested the defendant requested certain instructions to the jury and the submission of certain special questions, which will be mentioned later. The jury returned a verdict in favor of the plaintiff for $25,000 and answered special questions submitted as follows:

"1. At what rate of speed was the Knoche car traveling for a distance of approximately 200 feet prior to the collision? Answer: Between 25 to 30 M.P.H.

"2. How far, in feet, from the south line of Highway No. 5 on Mahaney Road was Mrs. Knoche when she first saw defendant's truck? Answer: 50 feet.

"3. Did Mrs. Knoche continue to observe the truck from the first time she saw it, up to the point of collision? Answer: No.

"4. If you answer Question No. 3 'No,' then state what, if anything, prevented Mrs. Knoche from observing the truck up to the time of the collision? Answer: Nothing.

"5. Did Mrs. Knoche increase the speed of her car when her car was north of the point of collision? Answer: No.

"6. Did Mrs. Knoche give any warning of any kind prior to the time of the collision? Answer: No.

"7. Is the signature of Defendant's Exhibit '1' the signature of Mrs. Knoche? Answer: Yes.

"8. How far did the Knoche car travel after the collision? Answer: 80 feet.

"9. At the time of the collision was, (a) The Meyer truck stopped, or (b) Moving? Answer: (a) _____ (b) Moving.

"10. Between the right rear corner of the Meyer truck and the west edge

of the road, was there room for an automobile proceeding south to pass? Answer: Yes.

"11. If you answer Question No. 10 'Yes,' then state whether the car proceeding south could pass said Meyer truck safely? Answer: No.

"12. If you find the driver of the Meyer truck guilty of any act of negligence, state in detail such acts of negligence? Answer: He was negligent as stated by law—8-553. The Meyer truck failed to observe and yield right of way to approaching automobile on Mahaney Road.

"13. If you find Mrs. Knoche guilty of any negligence, state in detail the act or acts of negligence of which you find her guilty? Answer: No negligence.

"14. From the time the Meyer truck proceeded to back out of the driveway described in the evidence in this case, did said truck stop before entering Mahaney Road? Answer: No.

"15. Did the driver of the Meyer truck give any warning of any kind prior to the time of the collision? Answer: No.

"16. At the time of the collision was any part of the Meyer truck west of the centerline of Mahaney Road? Answer: Yes.

"17. Was the Knoche car at any time driven on the east side of the centerline of Mahaney Road? Answer: No."

In due time the defendant filed its motion for a new trial, asserting fourteen grounds therefor; its motion that ten answers to special questions be set aside, the reason not being shown by the abstract; and its motion for judgment upon the answers to special questions, the motion containing an allegation that some of the answers were not supported by the evidence, were inconsistent with each other and required judgment for the defendant. These motions were denied and judgment was rendered on the verdict for the plaintiff against the defendant.

In due time the defendant perfected its appeal to this court. Its specifications of error are sufficient to discuss the questions which it states in its brief are involved: 1, That the plaintiff was guilty of contributory negligence; 2, that the trial court erred in overruling its motion for a new trial; 3, that the trial court erred in overruling its motion to set aside answers to certain special questions; 4, that the trial court erred in overruling its motion for judgment on the answers to the special questions; and 5, that the verdict was grossly excessive. No argument is presented as to Questions 3 and 4 and they will not be further noticed.

Appellant's first contention is that under the evidence and the findings of the jury the appellee was guilty of contributory negligence. Appellant makes it clear that it does not contend its demurrer to appellee's evidence should have been sustained. It admits there was evidence to support the findings of the jury that

at the time of the collision its truck was moving; that the truck did not stop before entering Mahaney Road; that its driver gave no warning; that at the time of the collision a part of its truck was west of the centerline of the road; and that appellee's automobile was not at anytime east of that centerline. Appellant directs attention to discrepancies between appellee's individual testimony and that of some of her witnesses as to location of appellant's truck in the private driveway, the speed she was driving, the distance her automobile went after the collision and whether there was room to the west of appellant's truck for her to have passed to avoid collision, and to the fact that in certain instances the jury's answers did not agree strictly with her personal version. In addition contention is made that the jury's answer to Question 11 is evasive and a conclusion and not a statement of fact; that the answer to Question 13 that appellee was guilty of no negligence is a conclusion and must give way to the answer to Question 2 that she did not continue to observe the truck from the first time she saw it up to the point of collision; that under the answer to Question 10 there was room to pass to the rear of the truck and that she did not apply her brakes.

It can readily be seen that appellant is not contending its demurrer should have been sustained for the reason appellee's own testimony showed her to be guilty of negligence which was the proximate cause of the accident. It can also be seen that appellant is not standing on all of the answers to special questions. It chooses to accept portions of the evidence, those findings favorable to it and to attempt to set aside or explain those unfavorable to it, and to ignore the other answers and general verdict with the result a somewhat incongruous situation is presented. We have examined *Adams v. Dennis*, 171 Kan. 32, 229 P. 2d 740, which appellant distinguishes from the instant case because in that case there was no room to pass; *Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538, where it was held that whether the driver of a vehicle on a through highway acted with reasonable diligence after discovering that an approaching truck driver was not yielding the statutory right of way was a jury question; *Cruse v. Dole*, 155 Kan. 292, 124 P. 2d 470, where it was held that men of reasonable minds would agree the plaintiff's conduct in operating his vehicle was below the standard to which he should have conformed for his own safety; and to cases where it has been held that the driver of a motor car on a

public highway has the duty to look ahead and see what is in his line of vision and in case of accident he is conclusively presumed to see what he could and should have seen, citing *McDonald v. Yoder,* 80 Kan. 25, 101 Pac. 468; *Gabel v. Hanby,* 165 Kan. 116, 193 P. 2d 239; *Bottenberg Implement Co. v. Sheffield,* 171 Kan. 67, 229 P. 2d 1004; *Blakeman v. Lofland,* 173 Kan. 725, 252 P. 2d 852, and *Stroud v. McCusker,* 175 Kan. 257, 263 P. 2d 260. Appellant also directs attention to *Fisher v. Wichita Transportation Corp.,* 156 Kan. 500, 134 P. 2d 393, holding that a jury's specific finding of fact that plaintiff did nothing to avert a collision and that nothing prevented him from doing so are controlling over its general finding which acquitted him of contributory negligence, and to *U. P. Rly. Co. v. Shannon,* 33 Kan. 446, 6 Pac. 564, and *A. T. & S. F. Rld. Co. v. Brown, Adm'r.,* 33 Kan. 757, 7 Pac. 571, as holding that where the jury disregards all of the evidence on an important point such a finding not only affects other special findings but may also affect the correctness of the general verdict.

To take up and fully discuss each question suggested by the above would unduly extend this opinion and serve no particular purpose. Although not specifically argued to the contrary we think the appellee's evidence made a prima facie case of appellant's negligence and was not of such nature and type that it might be said that it showed appellee guilty of contributory negligence as a matter of law. We are not warranted in weighing the evidence and resolving any differences there may be between the personal testimony of the appellee and that of her witnesses. Our reports are full of cases that is the function of the jury. Nor, as the matter is now presented, are we warranted in interpreting the jury's answers to special questions against the appellee in whose favor the general verdict was obtained. The answers, unless set aside as unsupported by or contrary to the evidence, are to be construed one with the other and in the light of the general verdict. We first note the answer to Question 3 that appellee did not continue to observe the truck from the first time she saw it to the point of collision. The decisions on which appellant relies, and later mentioned, lay down no test that a driver of a vehicle on the public highway has to do more than see what is in the range of his vision on the highway. If they are to be interpreted as holding that a driver along a highway lined on both sides with residences, as an exhibit discloses was the case here, must observe each pri-

vate driveway until he passes, must see and continue to see all parked cars on those driveways and that they do not move, or that no other thing or object comes from the land abutting the highway, an impossible situation is presented. One is not guilty of negligence who does not look for danger where there is no reason to apprehend any. (*Fowler v. Mohl*, 172 Kan. 423, 241 P. 2d 517, and cases cited.) The interpretation appellant contends for would mean that if appellee did not constantly watch oncoming traffic and all driveways, parked cars and other objects on lands abutting the highway, she would be guilty of negligence. The answer to Question 3 must be considered with the answer to Question 2 that she saw the truck when she was about 400 feet from the driveway where appellant's truck was parked and with her evidence which disclosed without dispute that she drove down Mahaney Road without incident until she was close to the driveway when the appellant's truck started and backed two or possibly three times its own length back across the highway, into her side of the highway and into her moving automobile, also with the answers to Questions 14, 15 and 16 that without any warning the truck was backed without stopping to the edge of the road and on to the point of collision on the west side of the road. Up to the time the truck was put in motion appellee had a right to act on the belief that appellant's driver would not start to back into the highway until after he had given warning of his intention to do so. Nor do we believe that the answer, to Question 10, there was room between the rear of the truck and the west edge of the road for appellee's car to pass convicts her of negligence. The answer to the next question (11) is that she could not have done so safely. The evidence was that the roadway had a paved surface of 19 feet and an over-all width of about 22 feet with a ditch to the west, that the rear of the truck when the collision occurred was about 8 feet from the west edge of the road thus leaving a space between the rear of the truck and the edge of the road of about 8 feet. Of course, a careful slow driver could have passed had the truck been stationary but here by reason of the moving out of the truck, which had not ceased moving when it struck appellee's automobile, a driver moving 25 to 30 miles per hour, as the jury found, could not safely pass. Under all of appellee's evidence a situation was created by the driver of appellant's truck whereby she was confronted with an emergency, requiring immediate action and de-

cision without time for deliberation. In such case she is not to be held to the strict accountability required of one situated under more favorable circumstances and is not guilty of contributory negligence as a matter of law. (*Schulz v. Chicago, Rock Island & Pac. Rld. Co.*, 167 Kan. 228, 236, 205 P. 2d 965.) Indeed to sustain appellant's contention the evidence and some of the jury's answers convict appellee of negligence, this court would have to weigh the evidence, contrary to its many decisions, resolve the jury's answers against the appellee, and speaking somewhat broadly, constitute itself as the trier of the facts. That, under all our decisions, it will not do.

Appellant contends that the special findings are inconsistent with each other and a new trial should be granted. Its argument is confined to directing attention to the answers to special questions 2, 3, 4, 6, 10 and 13 and to the citation of authorities, such as *In re Estate of Erwin*, 170 Kan. 728, 228 P. 2d 739, Syl. ¶ 6, holding that consistent answers to special questions control the verdict but when they are inconsistent with each other, some showing a right to a verdict and some showing to the contrary, a new trial should be granted. In other parts of this opinion the question of construction of the answers has been considered and need not be repeated. In our opinion the answers can be reconciled with each other and with the general verdict, hence appellant's position on this point cannot be sustained.

Although we depart from the order of their presentation in its brief we now consider appellant's contentions the trial court erred in overruling its motion for a new trial.

The first contention is that the trial court erred in refusing to give appellant's requested instruction No. 1. The general tenor of the requested instruction was that it was the duty of the driver of the vehicle upon the highway to look ahead and see everything in her line of vision and in case of a collision such driver will be *conclusively* presumed to have seen what she should and could have seen in proper performance of her duty. The trial court in its instruction 9 told the jury, among other things, that both the appellee and appellant's driver were required to keep a proper lookout at all times, the extent of such observations being dependent upon the conditions and circumstances then existing, and in instruction 10 it further told the jury that the law presumes that a driver will see those things which an ordinary careful operator would

and could see in the exercise of reasonable and ordinary care, under like or similar circumstances and a failure to see and observe things which could and in the exercise of ordinary and reasonable care should have been seen constitutes negligence. Appellant's contention is that the failure of the court to say that the driver is *conclusively* presumed to have seen what he could and should have seen in the proper performance of his duty was prejudicially erroneous in support of which he cites, *McDonald v. Yoder*, supra; *Gabel v. Hanby*, supra; *Bottenberg Implement Co. v. Sheffield*, supra, but as has been previously pointed out those cases involved situations where the objects to be seen were in or upon the highway and not objects on lands abutting the highway. While the instructions as given apply equally to appellee and appellant's driver, the factual situation was that appellee was in and upon the highway while, until almost immediately prior to the collision, appellant's truck was standing stationary in the private driveway from which it emerged. Had the truck been moving at all times a different situation would be presented. While we have no wish to weaken the rule of the cases relied on by the appellant, neither do we propose to widen its scope to include stationary objects located off the highway and upon lands adjacent thereto. In our opinion the court did not err in refusing to give the appellant's requested instruction in the form submitted.

Appellant contends the trial court erred in quoting in its instruction 15, among other applicable statutes, the language of G. S. 1949, 8-546, to the effect that no person shall start a vehicle which is stopped, standing or parked until such movement can be made with reasonable safety, for the reason it was not charged in the petition that appellant's driver was negligent in starting the truck. Examination of the petition discloses that ground (c) of the negligence charged was failure to give warning of intention to back the truck into Mahaney Road. Inherent therein was the charge that the truck was stopped and standing still before the backing started. The contention as made cannot be sustained.

Appellant contends its motion for a new trial should have been granted because the verdict was in whole or in part contrary to the evidence. Insofar as this complaint treats of negligence the argument is limited to reference to matters previously considered in connection with the contention first made that the evidence and answers showed appellee to be guilty of contributory negligence.

At the risk of repetition, we again point out that the fact the jury did not accept fully the appellee's personal testimony but made some of its findings in accord with the testimony of her other witnesses is not to be interpreted that the jury's verdict is contrary to the evidence. Appellee testified to no fact that precluded her recovery and cases like *Hefling v. City of Sharon*, 152 Kan. 512, 106 P. 2d 680, are not in point. The question whether the evidence supports the amount of the verdict is treated later.

Appellant also complains that the trial court erred in refusing to submit special questions as to whether the brakes on appellee's car were in good condition, whether she applied the brakes and whether there was anything to prevent her from applying them. The trial court did not err. Appellee testified that her brakes were good and that she did not apply them and this evidence was undisputed. The court properly refused to submit questions on points not in issue. (*Colin v. DeCoursey Cream Co.*, 162 Kan. 683, 687, 178 P. 2d 690.)

We consider together appellant's contentions that the verdict as to the amount of damages is grossly excessive and shows bias and prejudice on the part of the jury and that it was rendered under the influence of passion and prejudice.

The question as to the amount of the verdict and the judgment following it is obviously of importance to the appellant and its brief on the question is extended. It concedes that the mere fact the jury returned a verdict for the full amount for which the appellee claimed does not in and of itself render the verdict excessive, and it may further be noted that the fact it was so returned does not necessarily indicate bias or prejudice on the part of the jury. (*Stanfield v. F. W. Woolworth Co.*, 143 Kan. 117, 53 P. 2d 878.) It has been held on many occasions that whether a verdict is excessive depends on the facts and circumstances of the particular case. See, e. g., *Knoblock v. Morris*, 169 Kan. 540, 220 P. 2d 171. Before making reference to the evidence we shall take note of the contentions made by the parties.

Appellant's arguments in support of its contentions are summarized. After making a review of the evidence as to the extent of appellee's physical injuries and the permanence thereof, her treatment, pain and suffering, and her loss of earnings and earning capacity, appellant directs our attention to many of our decisions, many of which are cumulative in character. These cases have been

examined but only the following will be reviewed. Extensive quotation is made from *Dobson v. Baxter Chat Co.*, 148 Kan. 750, 85 P. 2d 1 (decided in 1938). Reference is made to that opinion for the facts. In ordering a remittitur of $5,000 from a judgment for $12,000 this court said there is no hard-and-fast rule by which the amount of a verdict may be measured to determine whether it is excessive, but that it was plain the award made was a great deal more than enough to compensate the plaintiff; that in cases where the amount of the verdict and judgment has been so out of proportion as to shock the conscience of the court, approval of the amount allowed had been withheld and the judgment affirmed only where the plaintiff would agree to a remittitur.

Extensive quotation is also made from *Henderson v. Deckert*, 160 Kan. 386, 162 P. 2d 88 (decided in 1945), reference being made to that opinion for the facts. There the plaintiff was 69 years of age, with an expectancy of less than nine years, whose wages ran from $25 to $36 per week. In that case the verdict was for $15,785 which was reduced by the trial court to $12,665. The defendant appealed and contended among other things that the verdict was excessive. In that case it was said:

"There is, of course, no uniformity in our decisions on the proposition of when damages allowed in a personal injury action are excessive for the simple reason determination of that question necessarily depends upon the facts and circumstances of each particular case as it is presented for review. Recognized in every case, however, irrespective of its results, is the now well-established doctrine that in order for a judgment to be set aside as excessive it must appear that it is so large as to shock the conscience of the court. (citing cases.) Many other cases to the same effect are to be found but they would only further emphasize the rule and time and space will not permit their citation.

"That the verdict in this case was liberal is beyond dispute. However, under the rule when we give full credence to all the testimony adduced by the appellee, heretofore set forth in detail, which we are required to do because the jury gave it such credence, we cannot say the verdict was sufficiently excessive, if actually excessive, as to evidence passion and prejudice on the part of the jury or to require the granting of a new trial. Obviously, under such circumstances, since the trial court in the exercise of its discretion saw fit to materially reduce the verdict we are not disposed to reverse the judgment on the ground it was excessive." (pp. 395, 396.)

Appellant misreads the allowances in *Leinbach v. Pickwick-Greyhound Lines*, 138 Kan. 50, 23 P. 2d 449 (decided in 1933). Reference is made to the opinion for facts as to personal injuries sustained. The verdict totaling $35,354.60 was itemized to show personal

injuries as $27,000 and other items for other amounts. The matter of excessiveness of the award for personal injuries is disposed of without extended discussion, it being said the majority of the court was of the opinion that item should be reduced to $20,000, and the judgment was modified to $28,354.60 if the plaintiff accepted the remittitur. There was no dissent to the opinion.

Other cases cited by appellant but not reviewed are *Whitesell v. Street Railway Co.*, 115 Kan. 53, 222 Pac. 133 (decided in 1924), where the trial court reduced a verdict of $22,500 to $15,000 and on appeal this court affirmed, and *Stroup v. Northeast Oklahoma Rld. Co.*, 122 Kan. 587, 253 Pac. 242 (decided in 1927) where the trial court reduced a verdict for $36,700 to $30,000 and on appeal this court reduced it to $20,000.

Appellant argues that here the total hospital and medical expense was $981, the loss of time was $217.50 and the remainder of $23,801.50 must have been for pain and suffering; that appellee suffered no permanent injuries and the amount is excessive and this court should grant a new trial or order a remittitur of a substantial amount.

In her brief appellee makes a review of the evidence, contends her loss of earnings is greater than appellant says; that the jury was not asked to and did not itemize the elements of its verdict, and that the following language found in *Knoblock v. Morris*, supra, is particularly applicable here:

". . . We have no way of knowing the specific amounts found by the jury on the other claims for damages in the remaining $10,457 of this verdict. Included in such remainder could be loss of wages, destruction of clothing and glasses, loss of future earning power, pain and suffering and permanent disability. An analysis and detailed discussion of our many decisions on the question of alleged excessive verdicts would serve no useful purpose and would add nothing to the body of our law on the subject. Each case must stand or fall on its own facts and circumstances. There was evidence in this case to the effect that plaintiff's disability was permanent. In a case such as this the jury is the trier of the facts, not this court. It heard the testimony and observed the witnesses and we can find nothing in this record to indicate that the verdict was the result of passion and prejudice. The trial judge approved the verdict in its entirety, and from the entire record before us we would not be justified in substituting our judgment for that of the jury. (*Henderson v. National Mutual Cas. Co.*, 168 Kan. 674, 215 P. 2d 225.)" (p. 546.)

Appellee also directs our attention to cost-of-living index figures as shown by the Statistical Abstract of the United States 75 Ed.,

published by the United States Department of Commerce Bureau of Census 1954, and sets forth the figures from 1913 to 1953, both inclusive, which need not be repeated, and contends that awards of former years for lesser amounts than the present verdict, actually purchased as much protection, comfort, rehabilitation and medical care as the present award will secure. She also directs attention to an annotation on "Changes in cost of living or in purchasing power of money as affecting damages for personal injuries or death," appearing in 12 A. L. R. 2d 611. In that extensive annotation at pages 614 and 629 may be found citation of many cases holding, that in deciding whether an award for damages may be sustained, it is generally held that changes in the cost of living, or alternatively in the purchasing power of money, should be taken into consideration by the courts, and that increased cost of living or impaired purchasing power of money is commonly recognized in justifying and sustaining personal injury awards as not excessive. It may be noted no Kansas cases are cited on the subjects last mentioned.

Notwithstanding there is a somewhat close connection between excessiveness of verdict and passion and prejudice of the jury, those questions are treated separately. In presenting the latter question appellant calls attention to the fact its counsel cross-examined the appellee at length for reasons not necessary to be set forth here, and infers, rather than states, that on that account the jury was prejudiced against it. In this connection it directs our attention to two decisions. One is *Harper v. Cox*, 118 Kan. 218, 234 Pac. 969, where exemplary damages were involved and where it is said the fact the defendant deserved punishment gave the jury no license to become vindictive; that they were bound to act dispassionately and to mulct defendant no further than the theory of exemplary damages contemplated. The other is *Leinbach v. Pickwick Greyhound Lines*, 135 Kan. 40, 10 P. 2d 33, where plaintiff sought to recover damages for personal injuries, for the death of his wife and for loss of property in the total sum of $62,100. The jury allowed the full sum asked. The trial court reduced the verdict by eliminating two items and rendered judgment for $61,-335.60. On appeal all questions were resolved against the appellant except as to the excessiveness of the verdict after its modification by the trial court. After consideration this court concluded the judgment could not stand; that the record would not warrant

a limited reversal and a new trial on all issues was ordered. The present appellant quotes at length from paragraph 13 of the above opinion. Limits of space preclude extensive reference to the lengthy treatment given the subject and we refer to the opinion therefor. We may only say here the factual situation in the last mentioned case varies so greatly from the one now under consideration that what is said in the opinion, while informative and enlightening, is hardly decisive of the instant appeal. On the question of passion and prejudice appellee says that the judgment was fairly supported by the evidence and could not have been and was not given under the influence of passion and prejudice.

To make an extensive review of the evidence as to appellee's injuries and damage would unduly extend this opinion and serve no particular purpose. All of the evidence as to those injuries and their permanence was the testimony of appellee, her husband and two doctors who attended her, and of three members of a medical commission appointed by the trial court. As to loss of earnings the evidence was the testimony of appellee and two school officials. Appellant offered no testimony in dispute but relies on matters developed on cross-examination of appellee's witnesses. In this posture of the case, in view of the general verdict in appellee's favor that no special questions were asked with reference to injuries and damage and that the verdict was not itemized as to elements of damage, the appellee is entitled to a favorable and not unfavorable review of the evidence.

The evidence disclosed that appellee was 41 years of age and we take judicial notice of standard mortality tables (*Stroup v. Northeast Oklahoma Rld. Co.,* supra; 31 C. J. S. 698; 20 Am. Jur. 113). Tables examined by us show the expectancy of a white woman of the above age is not lower than 27 years, although some tables show expectancies as great as 35 years.

Summarized the evidence disclosed that at the time she was injured appellee was teaching school at $2,200 per year and was unable to teach for five weeks after the accident; that she was offered the school for the year commencing in September, 1950, but did not accept, possibly because she was pregnant and had a child in November of that year; that she was offered another school at $2,400 but did not accept, had not taught since and her certificate to teach had expired. After the accident she consulted

her personal physician who examined her, prescribed a brace which she wore until October of 1953, except for a period of about three weeks before the birth of her child, and directed her to stay in bed, which she did. This doctor testified she had never had trouble with her back before the accident; he thought her injury was to the lumbrosacral joint. Another doctor examined her and an x-ray was taken after the injection of a contrast medium between the coverings of the spinal cord, with negative results. This operation is said to be dangerous and painful. On at least three occasions she was in the hospital for varying periods and traction was applied by placing weights on her limbs to relieve pain in her back and legs. On these occasions, which it is to be noted extended over a period of more than three years, she would get some relief but pain would return and in October, 1953, she submitted to an operation on the lumbrosacral region of her spine at which time the surgeons removed fragments and debris consisting of bone and portions of the intervertebral discs which had been forced back from their proper place between her vertebrae. We shall not attempt any résumé of the evidence that as a result she suffers pain in her back and left leg; that her movements, including ability to stoop, are impeded; that she walks with a limp; that they are permanent in character; and that until about the time of the trial in January, 1954, she had been compelled to spend a part of each day in bed.

All of the matters just mentioned were fully presented and argued to the trial court on the hearing of appellant's motion for a new trial. That court in its comments said that of course where the damages were only nominal a large verdict could not stand and it would not hesitate to cut them down or to grant a new trial. It then went on to say that this was not a case of that type; that it thought appellee was a very ill woman; that under all the circumstances, observing the appellee as it had and the jury did it could not say the judgment was excessive if she had to go through life as the medical testimony clearly indicated.

A full and careful examination of the record pertaining thereto convinces us that taking into consideration the age of the appellee, her expectancy in life, her loss of earnings, the nature of her injuries and their permanence, and the pain and suffering which she has endured from those injuries and the treatment thereof; and considering amounts of verdicts for somewhat comparable

injuries, heretofore approved, in the light of increased cost of living or the impaired purchasing power of money, it may not be said the amount of the verdict, even though it is for a substantial amount, is such as to shock the conscience of the court or that it should be set aside as unfounded by the evidence or as excessive. Nor, under all the confronting facts and circumstances, can we find anything in the record which would warrant or permit a conclusion the jury was influenced by bias or prejudice.

We conclude that error has not been made to appear and that the judgment of the trial court should be and it is affirmed.