576

No. 37,424
No. 37,461

Ralph Henderson and Fae Henderson, *Appellees* and *Cross-Appellants*, v. National Mutual Casualty Company and Lee N. Guthrie, doing business as Guthrie Truck Line, *Appellants*.

(203 P. 2d 250)

Opinion filed March 5, 1949.

*J. B. McKay,* of El Dorado, argued the cause and *Clem H. Silvers,* of El Dorado, was with him on the briefs for appellants National Mutual Casualty Company and Lee N. Guthrie.

*Paul R. Kitch,* of Wichita, argued the cause and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for appellees Ralph Henderson and Fae Henderson.

The opinion of the court was delivered by

Smith, J.: This was an action for wrongful death caused when an automobile in which plaintiffs' son was a passenger collided in the nighttime with a spudder, a large piece of machinery, left standing on a highway without lights. The case has been here before, at which time we affirmed a judgment which had overruled defendants' demurrer to plaintiffs' petition. (See *Henderson v. National Mutual Gas Co.,* 164 Kan. 109, 187 P. 2d 508.)

At the close of plaintiffs' evidence defendants' demurrer was overruled. There was a verdict for the plaintiffs and special questions were answered. Following the verdict the defendants filed motions for a new trial, for judgment notwithstanding the verdict, for judgment on answers to certain special questions and to set aside answers to various special questions. The court overruled the motions for judgment notwithstanding the verdict and for judgment on special findings, sustained a motion to set aside the answers to some of the special questions and sustained defendants' motion for a new trial because the answers to some of the special questions were inconsistent with each other and with the general verdict.

On May 13, 1948, the defendants appealed from the order overruling their demurrer to the plaintiffs' evidence. At that time the trial court had already allowed their motion for a new trial. On June 15, 1948, the plaintiffs appealed from the order granting defendants a new trial. On June 22, 1948, the defendants cross-appealed from the order overruling their motion for judgment on the

answers to special questions, to set aside answers to certain special questions, and from the order overruling their motion for a new trial as to various grounds stated therein other than the ones stated by the court. The result was that two appeals were lodged in this court. They were briefed and argued together, however, and will be dealt with in one opinion.

Plaintiffs argue in this court that since the defendants asked for and obtained a new trial they cannot be heard on appeal to argue that their demurrer to the evidence and other motions should have been sustained. Plaintiffs argue the sole question is whether the court was correct in allowing defendants a new trial for the reasons specified, that is, because two of the findings, to which reference will be made later, were inconsistent with the general verdict and with each other. To sustain this position they cite and rely on *Lewis v. Peoples State Bank*, 145 Kan. 844, 67 P. 2d 541; *Foust v. Mills*, 128 Kan. 471, 278 Pac. 745.

There is some support for plaintiffs' position in those opinions. We have reëxamined the question, however. A demurrer to the evidence is made an appealable order by the provisions of G. S. 1935, 60-3302. (See, also, *White v. Railway Co.*, 74 Kan. 778, 88 Pac. 54; and *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299.) Many times since then we have held that a demurrer to the evidence was an appealable order. For instance, we have held that a defendant may take an appeal from an order of a trial court overruling a demurrer to the evidence when the trial has ended in the jury failing to agree. (See *Coulter v. Sharp*, 145 Kan. 28, 64 P. 2d 564; *Israel v. Lawrence*, 126 Kan. 586, 270 Pac. 602) or when the trial has proceeded and at the close of the evidence the plaintiff has dismissed the action without prejudice. (See *Lane v. Atchison, T. & S. F. Rly Co.*, 151 Kan. 113, 98 P. 2d 403.)

If the record be such that the plaintiffs are not able to sustain the burden of proof it would seem the litigation should be ended without putting the parties to the expense of another trial, hence we have concluded that under circumstances such as we have here we will consider the correctness of the order overruling the demurrer to the evidence.

There was not much dispute in the evidence. Defendants offered none. In brief, it was about as follows: Lee Guthrie operated the Guthrie Truck Line. The defendant Casualty Company was his insurance carrier. Guthrie was engaged in the trucking

business under a permit issued by the Kansas Corporation Commission. The spudder he undertook to haul was a special piece of equipment weighing about 20 tons and mounted on wheels. It was 9½ feet wide, 13½ feet high and 18 feet long. Guthrie pulled it by use of one of his trucks. It was mounted on six wheels, double wheels on the rear, and single wheels in front. On account of the condition of these tires several blowouts had happened on the trip Guthrie was making. When the truck arrived at the place where the tragedy occurred his last spare tire had blown out and he had pulled the spudder as close to the edge of the highway as he could without tipping it over, and left it to find another tire. The left wheels of the spudder were about three feet south of the center of the highway. There was 18½ feet clearance in the road to the north of it. That was about 4 o'clock in the afternoon. He had put red flags about 100 feet to the front and rear. The road was level with no curves and had recently been surfaced with white chat, and the spudder itself was of a dark color. When Guthrie returned between 8:30 and 9 p. m. the tragedy had occurred. There were no lights or reflectors on the spudder. There were no lights or other warning devices on the highway except flags, one each way from the spudder, put there during the daytime.

That evening Dale Mast was driving a four-door Chevrolet automobile on this road going east. That was the same direction the spudder had been going. Norval Henderson, the deceased, was riding with him on the right-hand side of the front seat and Beulah Miller was in the middle. It was about 8:30 and the lights were on. Mast was driving about 35 miles an hour. He testified he saw a car coming from the other direction and was blinded for five or six seconds and while he was blinded hit the spudder. Norval Henderson was killed. Mast never saw the spudder at any time before the collision. He saw the lights on the other car for a considerable distance. They did not blind him at first but grew brighter as the car drew nearer. He was blinded five or six seconds while the car was traveling 35 miles an hour.

Just at the instant when the car in which plaintiff was a passenger collided with the spudder an employee of the state highway commission was putting out a flare on the highway east of the spudder on the opposite side from which Mast was approaching. He testified that at the same time a car approached from the east traveling at a high rate of speed and with bright lights.

On the question of speed and warning from Henderson, Mast testified, in part, as follows:

"Q. You hadn't reduced your speed and didn't reduce your speed after these other lights shown in your eyes before the collision occurred? A. Naturally, you will. When you get blinded you will naturally reduce speed.

"Q. Did either one of the other occupants of the car, Norval Henderson or Miss Miller say anything about being blinded? A. I don't remember.

"Q. You don't remember that they did, do you? A. No."

Norval Henderson was not married and no administration was had of his estate. The action was brought by his parents.

The trial was had on the third amended petition. It alleged that nine separate acts of defendants' negligence were the proximate cause of the injuries. Amongst these were failure to have a flare or lantern placed at a point approximately 100 feet to the front and rear of the spudder, and another one was in failing to place torches and flags at a distance of approximately 500 feet to the front and rear of the spudder when defendants knew its location was a hazard.

The defendants answered and alleged that Norval Henderson was guilty of some seven acts of contributory negligence, amongst them being failure to look ahead for objects on the highway; failure to see the spudder; failure to warn Mast of the speed or that Norval was blinded; failure to remonstrate and demand that the car be stopped when he became blinded; failure to warn the driver he was driving too fast. It also alleged some ten acts of negligence of which Mast was guilty but which it alleged were imputable to Norval. Amongst these in addition to the ones with which Norval was charged were failing to stop; failing to articulate his speed; failing to reduce his speed; failing to apply brakes on his automobile; defective brakes and defective lights.

Defendants argue that under the undisputed evidence Mast was guilty of contributory negligence as a matter of law because he drove his car at such a speed that it could not be stopped within the distance that objects could be seen ahead of it. It may be said that such is the duty of one driving a car on the highway at night unless there are some particular circumstances that take it out of the general rule.

We do not find it necessary to answer the question of the liability of defendants to Mast, the driver of the car. The question is not his contributory negligence. Henderson was a passenger and we are

concerned here with whether the uncontradicted evidence showed him to be guilty of contributory negligence as a matter of law.

Be that as it may, defendants argue that Henderson was guilty of contributory negligence as a matter of law because it was his duty to warn Mast when he saw the spudder.

It will not be amiss here to take note of the rule that in considering a demurrer to plaintiffs' evidence we will not weigh conflicting testimony and will draw all reasonable inferences and indulge all reasonable presumptions in favor of the plaintiffs.

The defendants not only had the burden of showing that the driver of the car was negligent as a matter of law but they must also show that Henderson was also negligent as a matter of law. Henderson is dead, so he could not testify.

In dealing with this question, defendants argue first that Henderson was guilty of contributory negligence as a matter of law regardless of whether he and Mast were on a joint enterprise. They state the rule to be that a passenger in an automobile is required to exercise due care for his own safety. That is the correct rule. As remarked when discussing the duty of a driver, however, each case must be dealt with in the light of the facts and circumstances surrounding it. If the minds of reasonable men might differ on the question of whether the conduct of Henderson was that of an ordinary reasonable man then the question of whether Henderson was guilty of contributory negligence was for the jury.

Defendants first point out the rule that the driver of a car is presumed to have seen what he could have seen. They argue then that Henderson, the passenger, must have seen the spudder because he could have seen it, and that having seen it he failed to warn Mast of the spudder being in the way, or to ask him to stop. In support of this argument, defendants point out the allegation in the plaintiffs' third amended petition, as follows: "The deceased and Dale Mast at no time were able to see the spudder trailer on the highway." Defendants argue that this pleading and the presumption, to which reference has been made, require a conclusion on our part that the undisputed evidence of plaintiffs showed that Mast and Henderson were driving down the highway at night without keeping their eyes on the road ahead. In dealing with this argument when the appeal was here before, we said, in part:

"The ordinary presumption is that a deceased person exercised reasonable care for his safety. (*Cruse v. Dole,* 155 Kan. 292, 297, 124 P. 2d 470; *Smith v.*

*Bassett,* 159 Kan. 128, 152 P. 2d 794, and cases therein cited.) The instant petition does not rebut that presumption. While the evidence in the case may show an entirely different situation we, on demurrer to the petition, must indulge the presumption that the decedent exercised due diligence for his own safety including a warning to the driver that he (the passenger) was blinded. (*Cruse v. Dole,* supra, p. 297.) Under such circumstances we cannot say the petition discloses decedent was guilty of contributory negligence as a matter of law." (p. 116.)

Counsel quotes this language and states that evidence did show an entirely different situation because Mast's testimony was that Henderson did not warn him. We have heretofore set out the testimony on this point. It does not have such positive character as to require us to hold it showed that Henderson did not warn Mast. Neither is the presumption the only item for consideration. There is evidence as to bright lights. It is a fair presumption that Henderson was suddenly blinded or had his attention attracted by the flare that was being put out by the highway employee on the other side of the spudder at the instant of the collision. Certain it is, defendants did not offer any evidence nor do they point out a circumstance which requires a conclusion that he was not blinded or that his attention was not attracted by the flare being placed on the other side of the road, nor is it an entirely unreasonable conclusion that Henderson saw the spudder but in the seconds that elapsed after he saw it and before the collision he presumed that Mast saw it and would stop. We must consider this evidence as the rules concerning demurrers to the plaintiffs require it to be considered. Plaintiffs do not in such a situation have the burden of proving that Henderson was not negligent. Rather defendants have the burden of establishing the evidence shows him to be guilty of negligence. Henderson was only required to exercise the care of an ordinary prudent man under all the surrounding facts and circumstances. (See *Link v. Miller,* 133 Kan. 469, 300 Pac. 1105; also *Cruse v. Dole,* 155 Kan. 293, 124 P. 2d 470.)

Defendants next argue Mast and Henderson were engaged in a joint enterprise and hence the negligence of Mast was imputable to Henderson. One of the arguments on this point is that in their answer defendants alleged Mast and Henderson were engaged in a joint enterprise and that since the reply was an unverified general denial that allegation of agency was admitted by plaintiffs and could not afterwards be denied by plaintiffs. We are considering

here only defendants' demurrer to plaintiffs' evidence. Defendants in their brief concede that this failure of plaintiffs to deny under oath the agency of Mast was not called to the attention of the trial court when defendants' demurrer to plaintiffs' evidence was argued. Had it been presented then, no doubt the trial court in the interest of justice would have allowed the reply to be verified. The failure to verify was not called to the attention of the trial court until defendants' motion for a directed verdict was argued. We are not considering the trial court's ruling on that motion now. We are considering only the demurrer to the evidence.

As to the question of the actual proof showing joint enterprise, the record is entirely lacking in the elements of equal privilege of direction and control, necessary to establish a case of joint enterprise.

The defendants' demurrer to plaintiffs' evidence was correctly overruled.

We pass now to consideration of plaintiffs' appeal from the order of the trial court allowing defendants a new trial. Eleven questions were submitted to the jury. They are answered, as follows:

"SPECIAL QUESTIONS

"1. Did Norval Henderson see the spudder at any time before the collision? A. Unknown.

"2. If you answer question No. 1 in the affirmative, then state how far the automobile was from the spudder when Norval Henderson first saw the spudder. A. Unknown.

"3. Was Norval Henderson blinded by the lights of another automobile? A. Unknown.

"4. If you answer question No. 3 in the affirmative, then state: a. How far the automobile was from the spudder when Norval Henderson first became blinded. A. Unknown. b. Whether the speed of the automobile was thereafter reduced. A. Unknown. c. Whether Norval Henderson told Dale Mast that he, Henderson, was blinded. A. Unknown.

"5. Did Norval Henderson, at any time before the collision, make any objection or protest as to the speed or manner in which the car was being driven? If your answer is Yes, answer fully. A. No.

"6. What, if anything, prevented Norval Henderson from seeing the spudder for the distance illuminated by the headlights of the car? A. Headlights of oncoming car.

"7. For what distance did the headlights of the car illuminate the road ahead? A. 150 feet.

"8. What was the rate of speed of the automobile?

"(a) As it approached the spudder? A. 35 M. P. H.

"(b) When the collision occurred? A. 35 M. P. H.

"9. If you find for the plaintiffs, please state fully each and every act of negligence of which you find defendant Guthrie was guilty. A. 1. Failure to put out torches and flagmen.

"10. If you find for plaintiffs, please state how much, if anything, you allow for plaintiffs for each of the following items—

"(a) Medical and hospital services and funeral expenses. A. $891.00.

"(b) Other expenses. A. $50.00.

"(c) Future contributions to be made by Norval Henderson to the support of the plaintiffs. A. Impossible to ascertain.

"11. If your verdict is for the plaintiffs, then state the value of any contributions, in money, goods or services, Norval Henderson had made to the plaintiffs in the year preceding his death. A. Money: $ Unknown
Goods $ Unknown
Services $900.00 based on Norval Henderson's services at the rate of $75.00 per month."

It will be noted the jury when asked question No. 3 whether Norval Henderson was blinded by the lights of another automobile answered "Unknown." Then in answer to question No. 6 when asked "What, if anything, prevented Norval Henderson from seeing the spudder for the distance illuminated by the headlights of the car?" answered "Headlights of oncoming car."

The trial court allowed a new trial for the reason that answer No. 6 was inconsistent with special finding No. 3, that is, it was the position of the trial court that when the jury could not tell whether Norval Henderson was blinded by the lights of another automobile then they could not intelligently have answered question No. 6—that the headlights of the oncoming car prevented him from seeing the spudder. Defendants argue here that these two answers are clearly inconsistent and show a determination of the jury to answer questions in favor of the plaintiff regardless of the evidence.

If the jury could not answer the question of whether Henderson was blinded by the lights of another automobile, then it was impossible for it to intelligently answer that he was prevented from seeing the spudder by the headlights of an oncoming car.

The trial court also pointed out the answer to special question No. 8 and allowed a new trial because it was inconsistent with special answer No. 4. It will be remembered the answer to question No. 8 found that the speed of the automobile as it approached the spudder and when the collision occurred was 35 miles per hour and in answer to special question No. 4b when asked whether the speed

of the automobile was thereafter reduced answered "Unknown." "Thereafter" referred to the preceding question in which the jury was asked how far the automobile was from the spudder and when Henderson first became blinded and the jury answered "Unknown."

If the jury could not tell whether the speed of the automobile was reduced after Henderson first became blinded, as it answered in 4b, then it had no facts from which to find that the car was traveling 35 miles per hour as it approached the spudder and was traveling at the same rate of speed when the collision occurred. These two answers were inconsistent.

These two answers were inconsistent with each other even if they were not inconsistent with the general verdict.

The answers show such a desire on the part of the jury to answer questions favorably to plaintiffs to require a new trial.

As to the other motions of defendants on account of the overruling of which the appeal is taken, the reason for considering the order overruling the demurrer to the evidence even though defendants had been granted a new trial does not apply to them. We will not consider the defendants' appeal from the order overruling their motion for judgment notwithstanding the verdict, for judgment on special findings, overruling their motion to set aside certain special questions and denying a new trial on grounds other than those mentioned by the court.

As to the appeal of defendants from the order overruling the demurrer to plaintiffs' evidence, the judgment of the trial court is affirmed. As to the appeal of plaintiffs from the order granting defendants a new trial, the judgment is affirmed.

SMITH, J. (dissenting): I find myself unable to agree with the conclusion reached by the majority as to granting defendants a new trial on account of inconsistencies between finding No. 3 and No. 6 in one instance and No. 4b and No. 8 in the other instance. Briefly, my position is, the first seven questions, excepting the sixth, should not have been asked. They relate altogether to Norval Henderson and what he saw. Norval Henderson is dead. He did not testify and made no statement. It makes no difference how many times this case is tried no jury will ever be able to find whether Norval Henderson saw the spudder at any time before the collision because Norval Henderson cannot tell us and there is no other way

for us to find out. Special questions are asked so as to clarify the issues and enable the court to reach an intelligent judgment. They are not intended as a trap for the unwary jury. As to question No. 8, all the evidence was to the effect that the speed of the car never varied. The jury answered that the only way they could answer it. As to question No. 6, the question is—"What, if anything, prevented Norval Henderson from seeing the spudder for the distance illuminated by the headlights of the car?" The only thing there was to so prevent him were the lights from the oncoming car, and Mast, the highway employee, had testified to that. If it was proper for such question to be submitted to the jury, it was proper for the jury to answer by following the only evidence offered. I do not think these special answers required a new trial.

Arn, J., not participating.