No. 46,039

Velma V. McGlothlin, *Appellee*, v. Phillip A. Wiles and Harold P. Harvey, *Appellants*.

(487 P. 2d 533)

Opinion filed July 16, 1971.

*Gerald Sawatzky*, of Foulston, Siefkin, Powers & Eberhardt, Wichita, argued the cause, and *Mikel L. Stout*, of Wichita, was with him on the brief for appellant Harvey.

*David W. Buxton*, of Fleeson, Gooing, Coulson & Kitch, Wichita, argued the cause, and *John E. Rees*, of Wichita, was with him on the brief for appellant Wiles.

*John C. Frank*, of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a damage action growing out of an automobile collision in which the plaintiff, Velma V. McGlothlin, sustained personal injuries. A substantial judgment was rendered against the defendants, Harold P. Harvey and Phillip A. Wiles, and they have appealed.

The numerous trial errors urged as grounds for reversal have been condensed into four main categories for the purpose of discussion: (1) removal of plaintiff's contributory negligence as an issue in the case; (2) denial of motions for a directed verdict and a motion for mistrial; (3) rulings as to admissibility of evidence; and (4) adequacy of the court's instructions.

Mrs. McGlothlin, along with two other ladies, were paying passengers in a Mercury automobile driven by defendant Harvey. The collision occurred about 6:37 a.m., December 19, 1966, at the intersection of Greenwich Road and Kellogg in Wichita when the occupants of the Harvey vehicle were on their way to work at the Cessna Aircraft Company. The Harvey car was proceeding south on Greenwich Road when it was struck by a Chevrolet pickup going west on Kellogg (U. S. Highway 54). The truck, owned by Schofield Bros. Pontiac, was being driven by defendant Wiles.

Kellogg is a four-lane thoroughfare with two lanes for westbound traffic, separated from the two eastbound lanes by a 30-foot medial strip. An access road runs parallel to Kellogg on the north side thereof and is separated from the westbound lanes by an island 14 feet wide with a chain link fence approximately 5 feet high in the center of the island. The posted speed limit for traffic on Kellogg at that point is 50 miles per hour. The main intersection is controlled by yellow flashing caution signals for east and west traffic on Kellogg and by red flashing lights for north and south traffic on Greenwich Road. In addition, there is a stop sign located just north of the intersection for southbound traffic approaching the intersection on Greenwich Road. At the time of the accident, the weather was clear and the intersection was brightly illuminated by street lights. Traffic at the intersection was heavy because of the proximity of several nearby aircraft plants.

According to testimony by the occupants of the Harvey automobile, when Harvey arrived at the intersection, he stopped at the stop sign and waited for westbound traffic on Kellogg to clear the

intersection. Several vehicles in the outside westbound lane were stopped or moving very slowly with their right turn signals blinking, indicating their intention to turn north on Greenwich Road. Aware of the intended movement of the cars in the outside lane, Harvey pulled to the north edge of Kellogg, made a "rolling stop," and seeing nothing approaching in the inside lane, proceeded slowly across the outside lane. He glanced to the right for traffic from the west on Kellogg, and upon looking back to the left, saw the pickup operated by Wiles bearing down on him from the east. At that point Harvey's vehicle was "centered over the center of the inside lane" and he "was looking right down the center of the pickup hood." Harvey accelerated his automobile in an effort to get out of the way, but the pickup struck the left rear side and door of the Mercury. Plaintiff, who was seated on the left side of the back seat, sustained serious injuries, necessitating her being confined to a hospital for more than a month and being off work for nearly 12 weeks. The other two lady passengers who were riding in the back seat were also injured.

On the morning in question, defendant Wiles was driving the Schofield truck from his home in Augusta to his employer's place of business in Wichita. He testified he was in and out of the two westbound lanes all the way from Augusta, passing other cars. Although he did not watch his speedometer closely during the course of his journey, he tried to stay within the speed limit of 60 miles per hour until reaching the posted 50-mile-per-hour zone ¾ of a mile east of the Kellogg-Greenwich Road intersection, at which point he slowed to 45 or 50 miles per hour and proceeded in the inside lane of traffic. Wiles estimated he slowed to 35 miles an hour as he approached the intersection and first saw the Harvey automobile. He immediately applied the brakes and at the time of impact, in his opinion, was going no more than 10 miles per hour. The pickup left 50 feet of skid marks up to the point of impact. A police officer testified a vehicle traveling 30 to 33 miles per hour would have stopped after leaving 50 feet of skid marks.

There was also evidence defendant Wiles had passed two other automobiles proceeding in a westerly direction on Kellogg immediately prior to the collision. The occupants of one of these cars said that when Wiles passed them about two miles east of the intersection he was traveling at least 70 miles per hour. According to the driver of the other automobile, Wiles was going about 65 or

70 miles per hour when he passed him three or four blocks east of the intersection. Defendant Harvey was unable to estimate precisely the speed of the pickup immediately before impact, but did say it "was coming fast"—"at least 60 miles an hour."

The three passengers in the Harvey automobile brought separate actions against Harvey and Wiles. The cases were consolidated for trial and judgments were entered for each of the passengers against both defendants. An appeal was perfected only with respect to the judgment rendered for the plaintiff McGlothlin.

Both defendants complain about removal of the issue of plaintiff's contributory negligence at the close of all the evidence. Defendant Wiles argues that the evidence at least presented a jury question as to whether or not plaintiff exercised reasonable care for her own safety. Defendant Harvey makes the rather novel argument that the issue of plaintiff's contributory negligence was improperly removed from the case because if there was any evidence of negligence on his (Harvey's) part, such evidence would also constitute evidence of contributory negligence on the part of plaintiff. Under the facts disclosed in the record, neither argument can be upheld.

The rule is well established in this jurisdiction that a passenger in a motor vehicle has the duty to exercise reasonable care for his own safety; that is, that care which a reasonably careful person would use his own protection under the existing circumstances. (*Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 481 P. 2d 980; *Sander v. Union Pacific Rld. Co.*, 205 Kan. 592, 470 P. 2d 748; *Kendrick v. Atchison, T. and S. F. Rld. Co.*, 182 Kan. 249, 320 P. 2d 1061; *Beye v. Andres*, 179 Kan. 502, 296 P. 2d 1049; *Henderson v. National Mutual Cas. Co.*, 166 Kan. 576, 203 P. 2d 250; P. I. K. 8.91 and comment.)

In the recent case of *Kelty v. Best Cabs, Inc.*, supra, we said that a passenger was negligent should he fail to warn the driver of approaching imminent danger. We held that the presence of a taxi cab standing in the driveway of a filling station and about to enter the street was not sufficient to suggest to the passenger in a vehicle proceeding on said street the presence of an imminent danger against which she should have warned her driver, and the trial court properly refused to submit an instruction regarding the passenger's contributory negligence. The opposite result, however, was reached in *Sander v. Union Pacific Rld. Co.*, supra, where a train was approaching a railroad crossing.

Both defendants seek to support their position by what was said in *Beye v. Andres, supra:*

". . . It is a general rule in this state that although the negligence of a driver is not imputed to a guest, or passenger, it nevertheless is the duty of a guest, or passenger, to exercise reasonable care for his own safety and, where he has the same opportunity as the driver to observe the dangerous conditions and circumstances and fails to take any precaution whatsoever for his own safety until it is too late, the matter of his contributory negligence is a proper question to be submitted to a jury." (P. 506.)

The contention is made that plaintiff was fully aware of the heavy traffic congestion at the intersection and had the same opportunity as her driver to observe traffic from the east on Kellogg. These circumstances, defendants say, presented a jury question as to whether plaintiff had kept a proper lookout and should have warned her driver of the impending danger. We do not agree.

The evidence discloses that plaintiff, as well as the other passengers, had ridden to work with Harvey for some time. All of them had complete trust and confidence in his driving. Traffic conditions at the intersection were not unusual on the morning of the accident. When Harvey slowed, or came to a "rolling stop," at the north edge of Kellogg and proceeded to cross the outside lane, plaintiff said she could see the inside lane east of the intersection for a distance of three or four car lengths and saw nothing approaching. The first notice she had of any danger was when Harvey accelerated the automobile and she looked up and saw the pickup. In her words, she "had no time to warn the driver."

The argument advanced by defendant Harvey, that if he is negligent, plaintiff is also contributorily negligent, is wholly untenable. Ordinarily, the duty of care imposed on a passenger in the back seat is not commensurate with that required of the driver of the automobile. A passenger, as a general rule, may properly rely upon the driver to attend to the operation of the vehicle in the absence of knowledge of danger or of facts which would give him such knowledge. In *Billings v. Aldridge,* 133 Kan. 769, 3 P. 2d 639, the court, speaking through Justice Harvey said:

". . . It is true that in whatever situation a person is he is under the duty to use due care for his own safety, but what constitutes due care depends upon the situation which he is in, and perhaps on many other circumstances. With respect to watching the road, observing possible dangers, handling the car, and the like, it is clear that the duty of the passenger in the back seat is not commensurate with that of the driver of the automobile. It is difficult to state a hard and fast rule by which it may be determined whether the passen-

ger or guest is negligent. Circumstances may be such that he 'would not be at fault if he took a nap.'" (p. 773.)

A case bearing factual similarity to the instant case is *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105. There, the plaintiff was riding in the rear seat of an automobile involved in a collision with another vehicle at an intersection. The evidence revealed that at a point 200 feet from the intersection plaintiff could see the other automobile approaching the intersection and that she failed to warn her driver or make any effort to avert the collision. In answer to the defendant's contention that plaintiff was guilty of contributory negligence, barring her recovery, this court stated:

". . . It was not the duty of Miss Link to remonstrate or take steps to leave the car until the danger became apparent. (*Naglo v. Jones*, 115 Kan. 140, 222 Pac. 116.) At the rate the car in which appellant was riding was traveling as it approached the intersection about ten seconds elapsed between the time when the jury found that appellee could first see the approaching car till the collision occurred. When she first saw the car she was not in a dangerous position. She had a right to expect the driver to manage the car so as to avoid a collision. She was not in a place of danger till the car reached a point near enough to the intersection that she could see it could not be stopped or slowed up quickly enough to avoid a collision. At that point what was there that she could do?" (p. 472.)

Here, the evidence is clear that plaintiff looked for approaching vehicles on the inside lane of Kellogg as Harvey moved across the outside lane, but saw no apparent danger. She had every right to expect that her driver would maintain a proper lookout for approaching vehicles and yield to those which were so close as to constitute an immediate hazard. By Harvey's own admission, his position as driver gave him a much better vantage point than any of his passengers for observing traffic on the inside lane. The duty of a passenger is dependent upon his opportunity to observe and warn the driver of approaching imminent danger. The Harvey vehicle was proceeding across the outside lane of traffic at 10 to 20 miles per hour. Although plaintiff did not become aware of the danger until Harvey accelerated his automobile, which was too late for her to give a warning, she would have been in no better position had she maintained a constant lookout. Perhaps the danger would have become apparent at an earlier point in time, but the speed at which the respective vehicles were traveling would have rendered futile any remonstrance or warning by her.

A person is presumed to have exercised reasonable care for his

own safety in the absence of evidence to the contrary. (*Kendrick v. Atchison, T. and S. F. Rld. Co.*, supra.) The evidence here does not suggest, and no inference can be drawn, that plaintiff failed to exercise reasonable care for her own safety under all the circumstances. We cannot say the trial court erred in withdrawing the issue of plaintiff's contributory negligence from the jury.

We now turn to the propriety of the trial court's rulings regarding motions for directed verdict and a motion for mistrial.

Defendant Harvey moved for a directed verdict at the close of plaintiff's evidence and again at the end of all the evidence. The overruling of the motions on both occasions is now assigned as error. Harvey pursues the alternative of his earlier argument claiming that if the trial court properly eliminated the issue of plaintiff's contributory negligence, a consistent view of the same evidence requires the conclusion that Harvey was not negligent. The fallacy of this argument is that the duty of a passenger in the back seat of an automobile cannot be equated to the duty imposed on the driver.

We need not burden this opinion with further review of the evidence concerning Harvey's actions leading up to the collision. It is sufficient to recall that after stopping at the north edge of the highway, he proceeded slowly across the outside lane and was nearly centered in the inside lane when he first saw the Wiles pickup. At that point, Harvey accelerated his automobile in an effort to get out of the way, but only succeeded in moving the rear portion of his vehicle into the path of the truck. Whether his actions were those of a reasonably careful person under the existing circumstances was, in our opinion, a matter for the jury. The evidence as heretofore presented created a factual issue upon which reasonable minds could reach different conclusions and was sufficient to make a submissible case. (*Elliott v. Chicago, Rock Island & Pac. Rld. Co.*, 203 Kan. 273, 454 P. 2d 124; *Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67.)

Defendant Wiles claims the trial court should have granted his motion for mistrial because plaintiff's counsel, in his opening statement and by questions posed to various witnesses, "deliberately and improperly brought to the jury's attention the probability that the responsibility for the satisfaction of any judgment against Wiles would be assumed either by Schofield Bros. Pontiac Co. or its insurer." The record reflects that counsel twice referred to Wiles'

employer in his opening statement, but it would appear in other parts of the opening statement and in the interrogation of the witnesses the matter was sufficiently clarified and the only connotation intended was the truck driven by Wiles was owned by the Schofield agency. The reference to insurance was made by plaintiff's counsel at a side-bar conference out of the hearing of the jury, and the defendant is in no position to claim the jury was prejudiced by what transpired. From the entire record, we are satisfied the jury clearly understood the law suit was against Wiles individually, and the mere fact the pickup was owned by the Schofield agency was to have no significance with respect to the rights and responsibilities of the parties. The motion for mistrial was properly overruled.

Both defendants claim prejudicial error was committed by the district court as a result of various rulings relating to the admissibility of evidence.

One of the automobiles passed by defendant Wiles immediately prior to the collision was driven by Bernard Davis. In response to a question about his state of mind at the time, Davis, over Wiles' objection, was permitted to testify that "I just figured the way he was driving, he was looking for an accident." Although we cannot agree with plaintiff's argument that the statement came within the exception to the hearsay rule found in K. S. A. 60-460 (*l*), we believe the testimony more nearly constituted an opinion of a nonexpert witness and was admissible, if at all, under K. S. A. 60-456 (*a*). At any rate, its admission cannot be said to be reversible error.

Another evidentiary ruling complained of is the exclusion of Exhibit D—plaintiff's health and work record kept by her employer. The main basis for the trial court's ruling was that the information contained in the exhibit had previously been testified to and was already in the record. This evidence related only to the extent of plaintiff's injuries and damages. Inasmuch as no complaint is made about the verdict being excessive, defendant Harvey cannot claim he was prejudiced by the exclusion of the exhibit. Nevertheless, his argument on the point has been examined and neither error nor prejudice is affirmatively shown. (See, *Shepard v. Dick*, 203 Kan. 164, 453 P. 2d 134.)

Turning to the instructions, we find that the district court gave an instruction substantially in the words of K. S. A. 8-552 (*b*) requiring a driver approaching a stop intersection to stop and yield the right

of way to any vehicle approaching so closely as to constitute an "immediate hazard." (P. I. K. 8.29.) Defendant Wiles complains the jury was not apprised of the meaning of "immediate hazard." The record is silent as to the reason the trial court declined to submit defendant's suggested definition of the term. "Immediate hazard" is not one of the statutory definitions contained in the Uniform Act Regulating Traffic On Highways (K. S. A. 8-501), and we are cited no authority that error is committed if the term is not defined.

The use of statutory language in an instruction is proper when it states the law applicable to the facts of the case. (*Wegley v. Funk*, 201 Kan. 719, 443 P. 2d 323.) The court, however, is not required to define every phrase used in an instruction unless from a fair reading of the instructions as a whole there is likelihood the jury will be misled or left to speculate without further explanation. We note that the authors of P. I. K. did not see fit to include a definition of "immediate hazard" as one of the pattern instructions, nor did they suggest the term be defined. The term does not lend itself to a precise definition. Whether a vehicle is approaching so closely as to constitute an "immediate hazard" depends on the facts and circumstances of each particular case. (e. g. *Blakeman v. Lofland*, 173 Kan. 725, 252 P. 2d 852; *Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538.) An instruction attempting to define the term' would of necessity include evidentiary facts, many of which could be in serious dispute. Such an instruction would frequently be susceptible to the criticism of singling out and giving special emphasis to particular evidence, or omitting an essential evidentiary fact. We are unable to agree with defendant's contention that without benefit of a definition the jury was left to conjure and speculate as to what constituted an "immediate hazard."

Complaint is also made by Wiles that instruction number 12 was given without an instruction that a "statutory violation must be found to have been the proximate cause of the accident." Instruction number 12, which was verbatim from P. I. K. 8.02A, pertained to the common law duty of a driver to keep his vehicle under proper control and drive within his range of vision. The short answer to this point is that the instruction did not relate to any specific alleged statutory violation and therefore, did not come within the rule stated in *Oil Transport Co. v. Pash*, 191 Kan. 229, 380 P. 2d 341, that mere violations of statutes regulating traffic are not sufficient

to make the driver guilty of actionable negligence unless such violations contributed to the accident and were the legal cause of the injury sustained. Furthermore, in instruction number 2 (P. I. K. 6.01) defining the issues and claims of the respective parties, the jury was informed that for the plaintiff to recover, it must find the negligence of one or both defendants was the direct cause of plaintiff's injuries and loss.

We are satisfied that the instructions, when considered together and in light of each other, fully apprised the jury of the issues presented and the law applicable thereto.

The judgment is affirmed.