No. 47,685

State of Kansas, *Appellee,* v. Kenneth D. Sparks, *Appellant.*

(535 P. 2d 901)

Opinion filed May 10, 1975.

*Michael Lerner,* of Barnett and Lerner, of Kansas City, argued the cause and was on the brief for the appellant.

*Salvatore A. Scimeca, Jr.,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General was on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant (Kenneth D. Sparks) appeals from a conviction by a jury of murder in the second degree. (K. S. A. 21-3402.) The victim was LaDonna King, the two-year-old stepdaughter of defendant. The state's case against defendant rested

largely upon circumstantial evidence and the sufficiency thereof is the paramount question on appeal.

Because of the nature of the questions raised we have called for and examined the original trial transcript in addition to the record on appeal. The evidence discloses that about 7 p. m. during the evening of March 18, 1971, defendant drove his automobile into a service station in Junction City. LaDonna and her mother, Linda Sparks, wife of defendant, were in the automobile. Defendant stopped at the station to telephone for an ambulance for LaDonna, who was having difficulty breathing. While defendant was telephoning, Linda screamed for help. Defendant left the telephone and carried LaDonna into the station. Two servicemen, Forrest Campbell and Sergeant Hall, stationed at nearby Fort Riley who had driven into the station for gasoline, responded to the screams by leaving their automobile and running into the service station where they administered mouth to mouth resuscitation to the little girl until the ambulance arrived. Campbell testified that LaDonna was gasping for breath and he observed bruise marks on her neck.

LaDonna was taken by ambulance to Irwin Army Hospital at Fort Riley. She was accompanied by defendant and Donald Sears, an ambulance attendant. The ambulance was driven by Roger Kramer who, as the evidence at trial disclosed, was also employed by the Junction City Police Department as a patrolman. Sears testified that while enroute to the hospital he asked defendant what had happened. Sears's testimony appears in the trial transcript as follows:

"Q. On the way to the hospital in the ambulance, did you have a conversation with the defendant?

"A. Yes, I did; I asked him what had happened.

"Q. And what was the defendant's reply?

"A. Well, he said that he was getting it on with the child.

"Q. Did he say anything else?

"A. Then he said that he hadn't hit her. . . ."

Sears also testified that he noticed a bruise about two inches in diameter on LaDonna's right cheek.

On arrival at Irwin Hospital, LaDonna was taken to the emergency room where she was examined by Dr. Andrew J. Gaizuinas, a surgeon. Dr. Gaizuinas testified that he examined the entire body of the child and found multiple bruises over the forehead, chin, arms, trunk and lower extremities; that she was comatose; and that her pupils reacted to light very sluggishly. He defined the

word "bruise" as blunt trauma or physical injury. After seeing the multiple distribution of bruise marks over LaDonna's body, Dr. Gaizuinas had the opinion that the most probable and likely possibility was that she was a so-called "battered child syndrome."

After examining the child Dr. Gaizuinas testified that he wanted to find out what happened to her. He went into the lounge, adjacent to surgery, and asked defendant what had happened to cause all the bruises on the child's body. The doctor testified:

"I asked him what happened to the child, whether he or somebody had beaten the child. He said he had not. He said that he had taken ahold of her and shaken her, and that she had fallen to the ground and stopped breathing, at which point he then related that he had tried to get an ambulance and then finally got an ambulance and brought her over."

A few minutes later, defendant made a further statement to Dr. Gaizuinas. The nature of this statement and the circumstances under which it was made were described by the doctor as follows:

"At this time—again, at this time, no one was present within hearing distance. And actually, this was instigated more by Mr. Sparks, who told me that it's unusual—or it's funny how people can get emotionally involved and do crazy things. This was basically the end of my conversation with Mr. Sparks."

After Dr. Gaizuinas saw the seriousness of the child's condition he called for anesthesia and the assistance of Dr. Hoffman, a pediatrician. The doctors concluded that neurosurgical assistance was needed and Dr. Joseph C. Mirabile, a neurosurgeon, was called. Dr. Mirabile described LaDonna's condition:

"The child was unconscious when we examined her. There were bruises on the left forehead, the left temporal area, which is this area here (indicating on self), the left side of the chin, and some bruises on the right side of the face, bruises on the hands, the feet, and really just about up and down both lower extremities. . . ."

Dr. Mirabile went on to say that the main problem seemed to be neurological—a head injury and that the physical symptoms were those of a blood clot on the left side of the brain, and that surgery, which was immediately performed, revealed that the brain was contused, slightly swollen with areas of bruises on it; and that in his opinion these conditions were caused by some physical force applied to the brain.

After surgery to relieve the pressure of a blood clot, LaDonna's condition was stabilized and she remained in Irwin Hospital until March 22 when she commenced convulsions and was sent to

Stormont-Vail Hospital in Topeka, where she received further treatment until her death on March 28, 1971.

An autopsy was performed by Dr. Wike Scamman, a pathologist and deputy district coroner. He testified that based upon his examination and reasonable medical certainty, death was caused by swelling of the brain resulting from repeated trauma to the head. It was his opinion that there had been a number of blows to the head, causing the brain to move back and forth inside the skull, and causing multiple small areas of disruption. He further stated that it would require a fairly severe blow to bruise the brain of a child of LaDonna's age.

Defendant took the stand in his own behalf. He testified that he had reprimanded LaDonna for fussing with her mother and that:

"A. I grabbed aholt of her, grabbed aholt of her arms, and picked her up and shook her. And then I sat her down, and then she backed up and fell back, stumbled and fell back to the floor and hit her head on the floor.

"Q. What portion of her head did she hit?

"A. It was the back portion (indicating on self).

"Q. All right. And then what happened?

"A. As soon as I seen that she was hurt, I jumped up—before I could jump up, before she fell, she fell and hit her head. I picked her up and laid her on the couch and I knew she was having trouble breathing. So I laid her on the couch, and so I—I was going to give her artificial respiration, and so on the way to get her mouth open—her mouth was closed tight, so I took my finger and stuck it in her mouth and had my fingers like this (illustrating) and pulled her mouth open so I could—

"Q. All right, and then did you commence—

"A. I commenced giving her artificial respiration."

Defendant denied that he hit or struck LaDonna or that he intended to kill her. On cross-examination defendant's testimony was uncertain as to whether LaDonna fell over from a sitting or standing position after he sat her down.

Defendant specifies numerous points on appeal. His arguments on points Nos. 1, 2, 3 and 5 all go to the proposition that the evidence was insufficient to support the verdict. Defendant first contends the trial court erred in overruling his motion for judgment of acquittal made at the close of the state's evidence. The basic thrust of his argument is that the circumstantial evidence presented did not nor could it prove corpus delicti. Defendant implies that circumstantial evidence, standing alone, is insufficient to sustain a murder conviction. Such is not the case. It is a well-established rule in this jurisdiction that a conviction of even the gravest offense

may be sustained by circumstantial evidence. (*State v. Ritson*, 215 Kan. 742, 529 P. 2d 90; and *State v. Hale*, 207 Kan. 446, 485 P. 2d 1338.) In the recent case of *State v. Wilkins*, 215 Kan. 145, 523 P. 2d 728, we held:

"The probative values of direct and circumstantial evidence are intrinsically similar and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each." (Syl. ¶ 4.)

In his brief defendant states the circumstantial evidence fails to positively show that: (1) Defendant committed the crime of second degree murder; (2) that he harmed LaDonna or caused her death; and (3) that LaDonna's injuries were not self-inflicted or the result of an accident. The very nature of circumstantial evidence makes it incapable of positively proving these or any other facts. What is true in this case is that LaDonna had been grievously injured by multiple blows to her head and body which caused her death. Defendant by his own testimony admitted that he physically handled LaDonna, although he denied that he intentionally injured her or intended to kill her. Dr. Gaizuinas testified the multiple bruises to the head and body were recent and severe. Dr. Scamman testified that there had been a number of blows to the head causing the brain to be moved back and forth and that it would require a fairly severe blow to bruise the brain of a child such as LaDonna. The medical evidence is undisputed that LaDonna suffered multiple bruises all around her head, a condition which is irreconcilable with a bruise which might have resulted from a fall such as that described by defendant. The undisputed evidence of LaDonna's condition on her arrival at the hospital, coupled with the surrounding circumstances, is sufficient to serve as a basis for the drawing of the necessary inference by the jury.

We have repeatedly said that when considering an appeal challenging the sufficiency of circumstantial evidence to sustain a criminal conviction, the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Ritson*, supra; *State v. Hale*, supra; and *State v. Gregory*, 191 Kan. 687, 383 P. 2d 965.)

In all of his points concerning sufficiency of the evidence, defendant relies upon *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846. Based on the decision in *Doyle* defendant argues the corpus delicti has not been proved since the evidence is susceptible to a construction which will prove innocence as well as guilt. Defendant's interpretation of *Doyle* is correct, but the case is clearly distinguish-

able from that at bar. In *Doyle* the state was required to exclude, by evidence, death by accident or suicide since the circumstances there pointed no more strongly to criminal homicide than to death by accident or suicide. In *Doyle* the dead man was found slumped over the steering wheel of his own automobile with a bullet wound in his right temple. A pistol lay beside his right hand on the front seat of the automobile. There was no evidence, circumstantial or otherwise, to indicate the accused was ever at the scene of the crime. In the instant case direct evidence placed defendant in physical contact with LaDonna, and established the cause of death as multiple bruises or traumas to the head. Obviously, LaDonna's injuries did not result from self-inflicted blows or attempted suicide.

Defendant claims second degree murder should not have been submitted to the jury because evidence of the essential element of malice is absent. In his argument on this point defendant takes the evidence most favorable to him and weighs it in his favor. This an appellate court cannot do. (*State v. Watson,* 204 Kan. 681, 466 P. 2d 296; and *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93.) It is reasonable to infer that a two-year-old did not beat herself to death or die as a result of injuries accidentally or unintentionally incurred while engaging in some rough contact sport or being reprimanded by a gentle shaking as defendant would suggest. From the evidence of the injuries to LaDonna's head it may readily be inferred that they were caused by repeated blows, severe enough to cause the resulting brain damage. It is common knowledge that the fragile frame of a two-year-old child can withstand only a limited amount of pummeling without resulting in serious injury or death. Malice as it relates to murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act. (1 Wharton's Criminal Law and Procedure, § 62, pp. 137-138; see, also, *State v. Donahue,* 197 Kan. 317, 416 P. 2d 287; and *State v. Watson,* supra.) Circumstantial evidence is competent to establish the necessary elements in a criminal case, including the corpus delicti; indeed it may alone be available in proving elements such as malice and intent which exist only in the mind of the perpetrator of the deed. (29 Am. Jur. 2d, Evidence, § 266, pp. 315-316.)

Defendant's contention that the jury's verdict was contrary to the law and evidence has been effectively answered by what has heretofore been said.

In his fourth point defendant asserts error in the trial court's

failure to include definitions of the words "willfully" and "intentionally" in instruction No. 1. The instruction in question consists of PIK [Criminal] 56.03 [Murder in the second degree], and a definition of "maliciously." It reads:

"The defendant is charged with the crime of murder in the second degree. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"(1) That the defendant killed LaDonna King;

"(2) That such killing was done maliciously; and

"(3) That this act was done on or about the 18th day of March, 1971, in Geary County, Kansas.

" 'Maliciously' means the purposeful and intentional doing of a wrongful act without just cause or excuse."

The word "wilfully" does not appear in the instruction and as the word "intentional" is used in the definition of "maliciously" its meaning is clearly made known. The court is not required to define every word or phrase in an instruction unless from a fair reading of the instructions as a whole there is likelihood the jury will be misled or left to speculate without further explanation. (*McGlothlin v. Wiles*, 207 Kan. 718, 487 P. 2d 533.) We find no error in this regard.

In points Nos. 6 and 7 defendant charges error in admitting color photographs of LaDonna, and in advising the jury it was admitting them for the sole purpose of their viewing any bruises upon LaDonna's body. The photographs were taken by Gregory Heinze, photographer at Fort Riley, the day after LaDonna was admitted to the Irwin Hospital. Defendant objected to the admission of the photographs and to the court's refusal to further admonish the jury on the purposes for which the pictures could be viewed. Defendant contends the photographs did not show her condition at the time she was admitted. Defendant argues that the photographs showed bruises LaDonna had sustained as a result of surgery and other medical treatment; and that these pictures were of such an inflammatory nature as to arouse the passion and prejudice of the jury. Although they were not included with the record on appeal, we have received and examined the photographs in question. Since it was established that LaDonna died as a result of repeated blows to her head, photographs portraying the results of blows to her head and body were relevant to the elements of malice and intent. Also, the photographs were relevant and material in assisting the jury's understanding of the testimony of the numerious medical

witnesses. There was no evidence that LaDonna suffered any bruises while in the ambulance or as a result of any treatment in the hospital. The bruises revealed by the photographs match the description of those on LaDonna's body upon her arrival at the hospital, as given by Dr. Gaizuinas in his testimony. In *State v. Randol*, 212 Kan. 461, 513 P. 2d 248, this statement appears:

"This court has repeatedly held that the admission of photographs of a decedent, including photographs taken during the autopsy, is not error where the photographs are relevant to matters in issue, such as the fact and manner of death or to assist in understanding a pathologist's testimony. . . ." (p. 466.)

Much to the same effect we said in *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21:

"Exhibits, be they pictures or otherwise, which are relevant and material to the matters in issue, are not rendered inadmissible merely because they may be shocking or gruesome. Where the defendant is charged with a crime of violence, colored slides are relevant and admissible if they tend to establish the violence which was alleged. . . ." (p. 275.)

Defendant next claims error in the admission of the testimony of Dr. Gaizuinas relating to the statements of defendant previously referred to. The record shows that Dr. Guizuinas, upon his own initiative and not upon the prompting of anyone else, approached defendant and asked him what had happened to the child. It was developed that Kramer, the ambulance driver, was in the room, although his presence was not noticed by the doctor. Kramer took no part in the conversation and the record does not show whether Kramer heard any of the conservation. Defendant now says that since Kramer was a policeman and present, it follows that the defendant had to be informed of his constitutional rights according to *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974. Defendant's position is untenable. *Miranda* deals with the admissibility of statements obtained during a custodial police interrogation. The doctor was not a policeman nor was he acting as a police agent and defendant was not in custody. Defendant's statements were freely given in response to the doctor's inquiries concerning LaDonna's physical condition and what had happened to her. In *State v. Porter*, 201 Kan. 778, 443 P. 2d 360, cert. den. 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919, we held:

"Incriminating statements or admissions which are made freely and voluntarily without threat of force or compulsion are not barred under the rules set forth in *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 [10 A. L. R. 3d 974], but are admissible in evidence." (Syl. ¶ 2.)

In his ninth point defendant reiterates the points previously discussed and seems to argue that the cumulative effect thereof requires reversal. Since we have found no reversible error, defendant's argument is to no avail.

Finally, defendant says he did not receive a fair trial due to public opinion existing in the community as evidenced by the fact that the jury only deliberated for twenty minutes prior to reaching a verdict. Defendant presented no evidence of media created prejudice or even of media coverage, nor does he allege any misconduct on the jury's part. Defendant's argument is totally unsupported.

Finding no reversible error shown, the judgment is affirmed.

FROMME, J., not participating.